THE STATE, EX REL. CHARLTON ET AL., APPELLEES, *v.* CORRIGAN, PROS. ATTY., ET AL.; GAUL, TREAS., APPELLANT.

[Cite as State, ex rel. Charlton, *v.* Corrigan (1988), 36 Ohio St. 3d 68.]

(No. 86-1969—Decided April 13, 1988.)

*John C. Meros,* for appellees.

*John T. Corrigan,* prosecuting attorney, and *Kevin Purcell,* for appellant.

*Anthony G. Pizza,* prosecuting attorney, and *Louise A. Fender,* urging reversal for *amicus curiae,* Lucas County Treasurer.

HOLMES, J. The instant action is one to compel the county treasurer to place his employees within the classified civil service and thus outside the treasurer's discretion to hire, fire, and promote. The treasurer has objected, asserting that his employees hold either an administrative or fiduciary relationship to him. The statutory authority for this contention is R.C. 124.11(A)(9) which excludes from the classified service, in pertinent part:

"The deputies and assistants of elective * * * officers authorized to act for and in place of their principals, *or holding a fiduciary relation* to such principals and those persons employed by and directly responsible to elected county officials and holding a fiduciary *or administrative relationship* to such elected county officials * * *." (Emphasis added.)

The court of appeals agreed that the statutory exemption applied to the administrator, all the chief deputy treasurers and the four deputy treasurers whose duties included invest-ment and banking decisions. However, it felt the remaining deputy treasurers were not exempt because they held neither fiduciary nor administrative relationships to the treasurer. Having reviewed the testimony presented at trial, we must disagree in part with the conclusion of the court of appeals. We hasten to state that we also disagree with the standard of inquiry established at the trial level. Accordingly, for the reasons hereinafter set forth, we reverse in part and affirm in part the judgment of the appellate court.

Pursuant to the above statute, there are two types of relationships which would provide exemption from civil service. One is the administrative relationship, while the other is the fiduciary relationship. Generally, an administrative relationship is characterized by a position where one is "in charge of carrying out * * * policy in the supervision of the daily activities of subordinates * * *," *Yarosh* v. *Becane* (1980), 63 Ohio St. 2d 5, 12, 17 O.O. 3d 3, 8, 406 N.E. 2d 1355, 1360-1361. It involves the exercise of personal judgment and leadership abilities, and not merely the relaying of orders. Therefore, a deputy in charge of formulating official policy, or in charge of carrying out that policy in the supervision of the daily activities of subordinates, is in an administrative relationship with a county official. *Id.*

Cases which have analyzed the nature of the fiduciary relationship exception to classified civil service requirements have invariably characterized the relationship as one of trust and confidence. See, *e.g., In re Termination of Employment* (1974), 40 Ohio St. 2d 107, 69 O.O. 2d 512, 321 N.E. 2d 603; *Yarosh* v. *Becane, supra; Rarick* v. *Bd. of Cty. Commrs.* (1980), 63 Ohio St. 2d 34, 17 O.O. 3d 21, 406 N.E. 2d 1101. It is "more than the ordinary relationship of employer and em-

ployee," *In re Termination of Employment, supra,* at 114, 69 O.O. 2d at 516, 321 N.E. 2d at 608; and exists where "special confidence * * * is reposed in the integrity and fidelity of another," *id.* at 115, 69 O.O. 2d at 517, 321 N.E. 2d at 609, citing 5 Bogert, Trusts & Trustees, 119-132; see, also, *Yarosh, supra,* at 11, 17 O.O. 3d at 7, 406 N.E. 2d at 1360. It may be concluded that in determining whether a fiduciary relationship exists between a public official and his appointed employees, pursuant to R.C. 124.11(A)(9), which would exempt such employees from civil service status, emphasis should be placed upon whether the assigned job duties require, as essential qualifications over and above technical competency requirements, a high degree of trust, confidence, reliance, integrity and fidelity.

One method of determining whether a fiduciary relationship exists in an employment situation is to examine the duties assigned to an employee. A great degree of discretion in carrying out one's assigned duties may indicate a trust relationship. *Rarick, supra,* at 37-38, 17 O.O. 3d at 23, 406 N.E. 2d at 1103-1104; see, also, *Yarosh, supra.* Of course, the trust relationship is among the highest of fiduciary relationships. However, there is a plethora of other circumstances within the law of fiduciaries which might also indicate the existence of a fiduciary relationship. For example, it is a rule that the actions of a fiduciary are those done, in good faith, for another's behalf and not merely because of legal obligations. Hence, it may also be inquired whether there is some element within the overall structure of the employment relationship which makes integrity and loyalty to the employer an essential job qualification, over and above technical or competency requirements. See, *e.g.,*

*Piatt* v. *Longworth's Devisees* (1875), 27 Ohio St. 159; 49 Ohio Jurisprudence 3d (1984), Fiduciaries, Section 2; *Rarick, supra,* at 37, 17 O.O. 3d at 23, 406 N.E. 2d at 1103; *Yarosh, supra,* at paragraph three of the syllabus.

In the present case, it appears, from the testimony presented at trial, that the parties misfocused their analysis upon the cashiering duty, which was the lowest common denominator among all deputy treasurers. Appellant asserted that since all deputy treasurers, regardless of their primary functions, must make disbursements and collect cash payments either at designated cashier windows or from a considerable volume of mail, they were all objects of reposed trust and thus fiduciaries. From the above assumed basis for decision, the trial court adopted the view that all deputy treasurers *were* fiduciaries, whereas the court of appeals concluded that all but one of those who testified *were not* fiduciaries.

This extreme divergence of opinion appears to have resulted in part from the narrow focus of the parties upon the cashiering duties; and was mistaken in light of *Yarosh, supra,* at 12, 17 O.O. 3d at 7, 406 N.E. 2d at 1360, wherein we stated that the mere act of handling money belonging to others does not, by itself, necessarily indicate the existence of a fiduciary relationship. In order to determine the kind of relationship which exists, courts should focus the analysis upon whether the duties assigned possess a routinized character or are assigned pursuant to criteria exemplifying that of a fiduciary. The cashiering duties in the instant case appear to have been rather routine. This being true, the trial court should have broadened the scope of inquiry, particularly when it became apparent that cashiering was

not the primary job function of most of the deputy treasurers who testified.

Moreover, while we recognize that having all eighty-seven deputy treasurers testify as to the characteristics of the duties which they perform would place a difficult burden upon both the trial court and the treasurer's office, we must conclude that the testimony of only nine deputy treasurers was insufficient to resolve the issue under the facts of this case. Random selection of a representative sample is useful when inquiry is limited to duties common to all within the total population of deputy treasurers. However, the technique loses its value once it becomes clear that the inquiry must broaden into duties more individualized than those for which the sample was originally selected, as in the present case.

The more appropriate procedure would therefore appear to require an analysis of the way in which the employees at issue are organized into divisions within the public office. Although much information is lacking in the record before us, the testimony presented makes it obvious that the deputy treasurers are not an amorphous body performing similar duties. Instead, there are major divisions and subdivisions among them. The office is organized within the four divisions of Operations, Administration, Legal and Personnel. Each division has a number of subdivisions, such as banking and investments, real estate, vendors, cigarette licenses, bookkeeping and data processing.

At a minimum, there should be testimony of at least one deputy treasurer from each subdivision, who is not a supervisor, which would establish the characteristics of those duties typically performed within that subdivision. Where the overall duties performed within a subdivision appear from the testimony to characterize those as fiduciary duties, then all those in that subdivision must be considered fiduciaries. Conversely, where such duties are routine, all those in that subsection cannot be said to have a fiduciary relationship to the treasurer.

Turning to the case before us, there was some individual testimony concerning the assigned duties of a number of deputy treasurers. The court of appeals quite correctly determined from the testimony of Bette Koson that she and the other three members of the investment section, which appears to be a subdivision of the administration department, were all exempt from the classified service. However, they are not all exempted for the same reason.

Koson testified that she was the supervisor over the subdivision. As such, she appears to have an administrative relationship to the county treasurer. Those under her authority within the subdivision make discretionary investment and banking decisions on a daily basis, affecting the receipts of the entire treasurer's office. Such discretion requires a high degree of trust and reliance by the treasurer, rendering the positions highly fiduciary in character.

The remaining witnesses all served within subdivisions of the operations department. Thus, we have no indication of the organization and duties of those deputy treasurers who are within the remaining departments, i.e., Administration, Legal and Personnel. We also conclude that the court of appeals incorrectly evaluated a number of those whose testimony indicated an exempt status as a matter of law. For example, Mary V. Mackin testified that she supervises twelve other employees within the bill and file section and reports directly to the treasurer. Obviously, she serves in an administrative relationship to the

county treasurer and is therefore exempt. There was, however, an insufficient inquiry to determine the characteristics of the duties of those non-supervisors within that section.

Robert E. Miller, William R. Studney and Mary Ann Winans testified that they all specialize in the handling of delinquent tax problems and are representative of their sections. Miller is a deputy treasurer in the real estate, delinquent taxes section, while Studney and Winans are in the personal property, delinquent taxes section. All deputy treasurers within these sections appear to have the authority to investigate particular taxpayers and have considerable discretion to establish repayment plans which will vary in individual cases. These deputy treasurers may also determine that the delinquency is best resolved by prosecution. As such, all those deputy treasurers within these sections have access to a variety of confidential and sensitive information about the county's taxpayers which would be derived from narrowly tailored audits and investigations. It would therefore appear that a high degree of trust must be reposed in those having control and access to such information. Further, these deputy treasurers' daily discretionary decisions as to how to resolve taxpayer problems require that they be persons of higher than normal reliability. Consequently, all the deputy treasurers within these sections would appear to be fiduciaries.

Noreen Patton and David J. McCune, on the other hand, presently occupy positions requiring routine and non-individualized discretion. Patton and three others are actually secretaries, but are neither legal nor personal secretaries. Their duties appear to be quite routine, including light typing, telephone answering and cashiering. McCune is an assistant cashier and does routine account balancing with discretion only over minor details of his duties. Their occupational chores, which are common to those with whom they serve, simply do not involve that degree of discretion or trust as to be considered fiduciary.

The testimony of both Kay Nagele and Rachelle D. Lee was inconclusive and will require further inquiry of a broader nature as to their individual positions and their particular duties. Positionally, Lee is a head cashier while Nagele appears to function in a supervisory capacity over one or two others. They may therefore have an administrative relationship to the county treasurer. Also, Lee appears to function within the real estate collections section, while Nagele has duties within the bookkeeping and data processing sections. Their testimony was not sufficiently directed toward the duties actually performed by those within such sections to afford any meaningful analysis. Upon remand, the trial court may inquire more particularly concerning these and all other sections not yet considered.

We also note that all deputy treasurers are subject to a formal internal program requiring that they learn every position within the treasurer's office. This is accomplished by having every deputy treasurer periodically shift job functions. However, it is observable from the testimony presented that some deputy treasurers hold their positions for a relatively longer time while others are shifted more regularly. The degree to which overlapping job functions and training intended to prepare future supervisors create fiduciary or administrative relationships is not apparent from the record and must be established upon remand. The treasurer ought to specially designate those persons who, although presently engaged in tasks of a rudimentary

nature, are in training for higher positions of either an administrative or fiduciary nature.

In conclusion, we remand this cause to the trial court for proceedings not inconsistent herewith. The judgment of the court of appeals is hereby reversed in part and affirmed in part.

*Judgment reversed in part and affirmed in part.*

MOYER, C.J., SWEENEY, LOCHER, WRIGHT and H. BROWN, JJ., concur.

DOUGLAS, J., concurs in judgment only.