**SMITH, Appellant,**

**v.**

**SUSHKA, Appellee.**

[Cite as *Smith v. Sushka* (1995), 103 Ohio App.3d 465.]

Court of Appeals of Ohio,
Fourth District, Washington County.

Decided May 15, 1995.

*Harris, McClellan, Binau & Cox* and *Mark S. Coco*, for appellant.

*John Alberty*, for appellee.

---

KLINE, Judge.

Appellant, Sandra S. Smith, appealed her removal from her position as the Administrative Assistant to the Engineer at the Washington County Engineer's Department and the subsequent abolishment of that position to the State Personnel Board of Review ("board"). In both cases the board's administrative law judge determined that appellant is exempted from classified service pursuant to R.C. 124.11(A)(9) by virtue of the administrative and fiduciary relationship she had with the county engineer during the year prior to her termination. Consequently, the administrative law judge recommended that the board dismiss the appeals for lack of jurisdiction over the subject matter.[1] The board adopted the administrative law judge's report and ordered the appeals dismissed.

Appellant then appealed these matters to the Washington County Court of Common Pleas pursuant to R.C. 119.12. The cases were consolidated, and the court of common pleas affirmed the board's orders.

---

1. R.C. 124.03 provides in pertinent part as follows:
 "The state personnel board of review shall exercise the following powers and perform the following duties:
 "(A) Hear appeals, as provided by law, of employees in the classified state service from final decisions of appointing authorities or the director of administrative services relative to reduction in pay or position, job abolishments, layoff, suspension, discharge, assignment or reassignment to a new or different position classification, or refusal of the director, or anybody authorized to perform his functions, to reassign an employee to another classification or to reclassify his position pursuant to a job audit under division (E) of section 124.14 of the Revised Code. * * * The board may affirm, disaffirm, or modify the decisions of the appointing authorities or the director, as the case may be, and its decision is final."
 The board's jurisdiction is therefore dependent upon whether an employee is in the classified or unclassified state service. The Ohio Supreme Court has held that the board may determine whether an employee is in the classified service "regardless of how they have been designated by their appointing authorities." *Yarosh v. Becane* (1980), 63 Ohio St.2d 5, 10, 17 O.O.3d 3, 6, 406 N.E.2d 1355, 1359.

Appellant assigns the following error:

"The finding that appellant Sandra Smith was an unclassified employee and therefore is not subject to the protections of the civil service laws is not supported by reliable, probative and substantial evidence."

Appellant was hired as an administrative assistant by the Washington County Engineer on November 2, 1981. Her position was retitled "Administrative Assistant to the Engineer" in 1984. During the years 1985 to 1992, appellant served under County Engineer Paul F. Junk. Appellant's duties included bookkeeping, managing the Washington County Engineer's Office, advising the Washington County Engineer concerning budget allocations and projections, and supervising the account clerk, among other functions.

In November 1992, appellee, Ted W. Sushka, was elected Washington County Engineer, defeating Junk, and was sworn in on January 4, 1993. Appellee planned to reorganize the department, and part of this reorganization involved terminating appellant, which he did effective March 2, 1993, and later abolishing the administrative assistant position.

Upon an appeal from an administrative agency, the trial court looks to see if the evidence supports the agency's finding. R.C. 119.12 provides in pertinent part as follows:

"The court may affirm the order of the agency complained of in the appeal if it finds, upon consideration of the entire record and such additional evidence as the court has admitted, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law."

Once the agency's order reaches a court of appeals, the scope of review is more narrow. The Supreme Court of Ohio has held as follows:

"In reviewing an order of an administrative agency, an appellate court's role is more limited than that of a trial court reviewing the same order. It is incumbent on the trial court to examine the evidence. Such is not the charge of the appellate court. The appellate court is to determine only if the trial court has abused its discretion. An abuse of discretion ' " * * * implies not merely error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency." ' *State, ex rel. Commercial Lovelace Motor Freight, Inc., v. Lancaster* (1986), 22 Ohio St.3d 191, 193, 22 OBR 275, 277, 489 N.E.2d 288, 290. *Absent an abuse of discretion on the part of the trial court, a court of appeals must affirm the trial court's judgment.*" (Emphasis added.) *Lorain City School Dist. Bd. of Edn. v. State Emp. Relations Bd.* (1988), 40 Ohio St.3d 257, 260–261, 533 N.E.2d 264, 266. See, also, *Rossford Exempted Village School Dist. Bd. of Edn. v. State Bd. of Edn.* (1992), 63 Ohio St.3d 705, 707, 590 N.E.2d 1240, 1241 (citing *Lorain City School Dist. Bd. of Edn.*); *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d

619, 621, 614 N.E.2d 748, 750–751 (citing *Lorain City School Dist. Bd. of Edn.* and *Rossford Exempted Village School Dist. Bd. of Edn.*).

Accordingly, while the trial court's standard of review is whether the board's "order is supported by reliable, probative, and substantial evidence and is in accordance with law," R.C. 119.12, this court's standard of review is whether the trial court has abused its discretion.[2] In so reviewing the judgment of the trial court, this court "must not substitute [its] judgment for those of an administrative agency or a trial court absent the approved criteria for doing so." *Lorain City School Dist. Bd. of Edn.,* 40 Ohio St.3d at 261, 533 N.E.2d at 266.

Appellant contends that she is a classified employee in the civil service. R.C. 124.11 sets forth the distinction between classified and unclassified service:

"(A) The unclassified service shall comprise the following positions, which shall not be included in the classified service, and which shall be exempt from all examinations required by this chapter:

" * * *

"(9) The deputies and assistants of elective or principal executive officers authorized to act for and in the place of their principals, or holding a fiduciary relation to such principals, or holding a fiduciary relation to such principals and those persons employed by and directly responsible to elected county officials and holding a fiduciary or administrative relationship to such elected county officials, and the employees of such county officials whose fitness would be impracticable to determine by competitive examination * * *."

The significance of this distinction is that those employees in the classified service can be removed only for good cause pursuant to the procedures of R.C. 124.34. Employees in the unclassified service are not entitled to this protection. See *Yarosh v. Becane* (1980), 63 Ohio St.2d 5, 9, 17 O.O.3d 3, 5, 406 N.E.2d 1355, 1359.

Consequently, those employees who have a fiduciary or administrative relationship to elected county officials are in the unclassified service. The issue in this case, therefore, is whether appellant had a fiduciary or administrative relationship to the Washington County Engineer. "This question is one of fact, not of title, and can only be answered by examination of the duties assigned to

2. The Supreme Court of Ohio set forth a different standard of review in *Brown v. Ohio Bureau of Emp. Serv.* (1994), 70 Ohio St.3d 1, 635 N.E.2d 1230. In that case, the Supreme Court found that "the decision of the court of common pleas was supported by reliable, probative and substantial evidence." *Id.* at 3, 635 N.E.2d at 1231. The Supreme Court was thereby utilizing the same standard of review as the trial court. The Supreme Court did not, however, overrule any of its previous cases which held that the standard of review is abuse of discretion. This court finds that it would reach the same conclusion under either standard.

and performed by the [employee]." *In re Termination of Emp.* (1974), 40 Ohio St.2d 107, 115, 69 O.O.2d 512, 516, 321 N.E.2d 603, 609.

The Supreme Court of Ohio has explained the meaning of "fiduciary or administrative relationship" in a number of cases. In *In re Termination of Emp.,* the Supreme Court stated that the words "fiduciary" and "administrative" imply "something more than the ordinary relationship of employer and employee." *Id.* at 114, 69 O.O.2d at 516, 321 N.E.2d at 608.

 "A 'fiduciary relationship' is one in which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust." *Id.* (citing 5 Bogert on Trusts and Trustees, 119–32). Fiduciary relationships may be found where the employee is required to perform duties that could not be delegated to the average employee with knowledge of proper procedure, because such a position requires special trust and confidence. *Yarosh v. Becane,* 63 Ohio St.2d at 11, 17 O.O.3d at 7, 406 N.E.2d at 1360. Also indicative of a fiduciary relationship is the degree of discretion an employee enjoys in carrying out his or her duties. *State ex rel. Charlton v. Corrigan* (1988), 36 Ohio St.3d 68, 71, 521 N.E.2d 804, 806 (citing *Rarick, infra,* and *Yarosh* ).

 "It may be concluded that in determining whether a fiduciary relationship exists between a public official and his appointed employees, pursuant to R.C. 124.11(A)(9), which would exempt such employees from civil service status, emphasis should be placed upon whether the assigned job duties require, as essential qualifications over and above technical competency requirements, a high degree of trust, confidence, reliance, integrity and fidelity." *Id.*

 Trustees, lawyers, accountants, and guardians are all examples of fiduciaries. *In re Termination of Employment,* 40 Ohio St.2d at 115, 69 O.O.2d at 516, 321 N.E.2d at 609.

The Supreme Court discussed administrative relationships in *Yarosh v. Becane,* which, like *In re Termination,* involved a determination of whether a deputy sheriff was in the classified service:

"A deputy is in an administrative relationship with a sheriff when the duties the deputy is required to perform for the sheriff are such that the sheriff must rely on the deputy's personal judgment and leadership abilities. These qualities are highly subjective in nature and cannot be examined in any practical manner." *Yarosh v. Becane,* 63 Ohio St.2d at 12, 17 O.O.3d at 7, 406 N.E.2d at 1360.

 Also indicative of an administrative relationship is the responsibility for "formulating official policy" or "carrying out that policy in the supervision of the daily activities of subordinates." *Id.*

The board examines a one-year time period for jurisdictional hearings. After the change of administration in the Washington County Engineer's Department, appellant worked only two and a half weeks in January and February 1993. During this time, appellant's duties were limited in comparison to those she performed under prior administrations.

Appellant contends that ninety percent of her time as an administrative assistant was spent on bookkeeping duties. She also performed various clerical and receptionist duties. Based on these responsibilities, appellant would have us find that she does not have a fiduciary or administrative relationship to the county engineer and is therefore in the classified service.

Appellant cites *State ex rel. Charlton v. Corrigan, supra,* for the proposition that only appellant's primary job duties should be considered in the determination of whether she was in the classified service. We disagree with appellant's interpretation of this case. In *Charlton,* the Supreme Court of Ohio found that the proper inquiry should focus on the individualized duties of each employee and how the employees are organized within a department. *Id.,* 36 Ohio St.3d at 72, 521 N.E.2d at 807.

This court has held that *all* of an employee's duties should be considered when determining whether that employee is in the classified service. In *Honaker v. Scioto Cty. Common Pleas Court* (Dec. 6, 1993), Scioto App. Nos. 92–CA–2087 and 92–CA–2088, unreported, 1993 WL 524974, this court considered two employees who performed duties of both a bailiff, which is an unclassified position, and a probation officer, which is a classified position. The employees contended that their primary duty was that of a probation officer, and that only minimal time was spent performing bailiff's duties. This court held that "the Court was not required to establish that [the employees'] primary responsibility was that of a bailiff; rather, the Court could meet its burden by simply showing that [the employees] performed some bailiff's duties." We concluded that "the Board would still have properly found them to be in the unclassified services because of the 'minimal' duties assigned to and performed by them as bailiffs." *Id.*

In order to determine the nature of appellant's relationship to the Washington County Engineer, the court must examine the duties appellant performed during the year before her termination. Appellant does not dispute that her position included duties other than bookkeeping which were of a more fiduciary or administrative nature. For example, appellant concedes that one of her duties was to supervise the account clerk and assign her work. She was also authorized to, and infrequently did, approve leave requests for other employees.

In *State ex rel. Charlton v. Corrigan,* the Supreme Court of Ohio determined that two deputy treasurers who supervised other employees had an administra-

tive relationship to the county treasurer. Regarding one of the deputy treasurers, the court noted that "[t]hose under her authority within the subdivision make discretionary investment and banking decisions on a daily basis, affecting the receipts of the entire treasurer's office. Such discretion requires a high degree of trust and reliance by the treasurer, rendering the positions highly fiduciary in character." *Id.*, 36 Ohio St.3d at 72, 521 N.E.2d at 808. Another deputy treasurer supervised twelve other employees and reported directly to the treasurer: "Obviously, she serves in an administrative relationship to the county treasurer and is therefore exempt." *Id.* at 72–73, 521 N.E.2d at 808.

In another case, the Supreme Court of Ohio found that supervision duties implied an administrative relationship:

"The Raricks were directly entrusted by the county commissioners with the duty of supervising the work of the building maintenance staff, and with arranging that the work was timely and diligently done. In entrusting the work to the Raricks, the county commissioners were delegating a duty it was their responsibility to see was properly done, and in so doing, the commissioners had to rely on the Raricks' personal judgment and supervisory abilities." *Rarick v. Bd. of Cty. Commrs.* (1980), 63 Ohio St.2d 34, 38, 17 O.O.3d 21, 23, 406 N.E.2d 1101, 1104.

Appellant, like the Raricks, was directly entrusted with the duty to supervise another employee. Furthermore, appellant conducted many of her activities with little input from superiors, another characteristic indicating a fiduciary or administrative relationship. See *id.* at 37, 17 O.O.3d at 22, 406 N.E.2d at 1103 ("Duties which are closely supervised by the appointing authority do not place a position in a fiduciary or administrative relationship with the authority; no special confidence and trust in an employee's abilities and integrity is involved."). We therefore determine that appellant's supervisory duties place her in an administrative relationship with the county engineer.[3]

We reject appellant's contention that her authority to approve leave requests for other employees was exercised so infrequently as to render it impertinent. This case is distinguishable from *Gallia Cty. Sheriff v. Burnette* (Feb. 16, 1993), Gallia App. No. 92–CA–13, unreported, 1993 WL 34450, in which the personnel

---

**3.** The Supreme Court of Ohio distinguished the ability to temporarily supervise other employees in certain situations or to relay orders from superiors, which does not necessarily signify an administrative relationship. "Any deputy may be expected to relay orders or if he or she possesses sufficient knowledge of police procedure to direct an on-the-scene investigation. The basic knowledge required is testable; exceptional leadership and judgment ability is not required." *Yarosh v. Becane,* 63 Ohio St.2d at 12–13, 17 O.O.3d at 7–8, 406 N.E.2d at 1361. We find that appellant was not merely relaying orders, but rather was entrusted to supervise the operation of the county engineer's office.

aide to the county sheriff had a clerical recordkeeping function regarding vacation and sick leave. In that case, time off was ultimately approved by each employee's immediate supervisor and the sheriff. In the case *sub judice,* however, appellant was the only person to approve the leave requests when she did so.

This case is also distinguishable from *Hitchens v. Ohio Dept. of Transp.* (Oct. 14, 1993), Franklin App. No. 93AP–315, unreported, 1993 WL 418368, which appellant cites in support of her argument. In that case, the new director of the Department of Transportation retained the appellant after releasing all other deputy directors solely because appellant had only nine more months until he could retire. During these nine months, the appellant performed "little gopher projects" and had to search for work to keep him busy. The Franklin County Court of Appeals had much more evidence than that presented in this case to find that the appellant was a classified employee.

We now examine some of appellant's nonsupervisory duties. For example, part of appellant's bookkeeping duties involved preparing all taxes for the Washington County Engineer's Office, making revenue transfers, and managing the $5.5 million per annum budget. On rare occasions, she also signed documents for the county engineer. Furthermore, appellant was authorized to approve expenses for any employee up to $150 in the engineer's absence, although there was some indication that there were established procedures for these authorizations.

Appellant cites *State ex rel. Charlton v. Corrigan* in support of her claim that these duties do not render her a fiduciary. In that case, the Supreme Court of Ohio stated that "the mere act of handling money belonging to others does not, by itself, necessarily indicate the existence of a fiduciary relationship. In order to determine the kind of relationship which exists, courts should focus the analysis upon whether the duties assigned possess a routinized character or are assigned pursuant to criteria exemplifying that of a fiduciary." *Id.,* 36 Ohio St.3d at 71, 521 N.E.2d at 807 (citing *Yarosh v. Becane* ).

In this case, appellant was not merely handling money, and the duties were not routine. Appellant admitted that she executed these responsibilities only sporadically. Similarly, in *Rarick v. Bd. of Commrs.,* 63 Ohio St.2d at 38, 17 O.O.3d at 23, 406 N.E.2d at 1104, the Supreme Court of Ohio found two county commissioner employees to be in the unclassified service despite other duties of a more routine nature. The employees had "two duties, assigned and performed, which did place them in the unclassified service. These are the duty to purchase supplies through blanket purchase orders and the duty to supervise and arrange for the work of the building staff." *Id.* The purchasing duties involved blanket purchase orders which allowed the employees to purchase needed supplies wherever they chose. Although there was a limit on purchase orders of $300, the clerk of the county commissioners routinely issued additional purchase orders

upon request. *Id.* at 38–39, 17 O.O.3d at 23–24, 406 N.E.2d at 1104. The Supreme Court found that "[t]rust in the [employees'] honesty and judgment was required," and therefore the employees were fiduciaries. *Id.* at 39, 17 O.O.3d at 24, 406 N.E.2d at 1104. Likewise, appellant was also a fiduciary.

Appellant attempts to minimize the importance of her responsibilities by reference to the computerization of the office. For example, appellant worked with the account clerk to post payroll. Although a computer program computed the wages and bonuses, appellant was ultimately responsible for making sure that the proper procedure was followed, and she occasionally reviewed and certified the payroll rosters when the county engineer could not do so. See *id.* at 38, 17 O.O.3d at 23, 406 N.E.2d at 1104. Appellant was also responsible for modifying existing contracts to make them appropriate for new situations. Although a computer may make these activities easier, it cannot detract from their importance.

Appellant's fiscal responsibilities render her a fiduciary for another reason. In *State ex rel. Charlton v. Corrigan*, the Supreme Court of Ohio noted that "all those deputy treasurers within these sections have access to a variety of confidential and sensitive information about the county's taxpayers which would be derived from narrowly tailored audits and investigations. It would therefore appear that a high degree of trust must be reposed in those having control and access to such information. Further, these deputy treasurers' daily discretionary decisions as to how to resolve taxpayer problems require that they be persons of higher than normal reliability. Consequently, all the deputy treasurers within these sections would appear to be fiduciaries." *Id.*, 36 Ohio St.3d at 73, 521 N.E.2d at 808.

Appellant's position granted her access to similar types of confidential and sensitive information and therefore also required a high degree of trust.

Finally, it is also worth noting that appellant was the only administrative assistant to the Washington County Engineer. Junk testified that appellant was responsible for overseeing the office and that he placed a lot of trust and confidence in appellant and her representations of amounts and figures. Although Junk testified that he had the same amount of trust in appellant as he had in all of his employees, he did not trust all of his employees with the same prominent and indispensable responsibilities. The fact that appellant was authorized to sign for him, regardless of how often she actually needed to do so, demonstrates this fact and makes that signing a duty actually assigned and performed. Appellant was the only person in charge of managing the office budget, which unquestionably requires an abundance of trust, integrity, and

loyalty.[4] Junk also testified that appellant had the highest salary of any employee in the administrative office, which he justified by noting the quality of appellant's work and amount of responsibility she had.

The trial court did not abuse its discretion in finding that the order of the State Personnel Board of Review is supported by reliable, probative and substantial evidence and is in accordance with law. The assignment of error is overruled and the judgment of the trial court is affirmed.

*Judgment affirmed.*

PETER B. ABELE, P.J., and HARSHA, J., concur.

---

**4.** By contrast, one may consider secretaries who are neither legal nor personal. "Their duties appear to be quite routine, including light typing, telephone answering and cashiering. * * * Their occupational chores, which are common to those with whom they serve, simply do not involve that degree of discretion or trust as to be considered fiduciary." *State ex rel. Charlton v. Corrigan,* 36 Ohio St.3d at 73, 521 N.E.2d at 808.