The saga of Angel Lewis' three-year effort to be reinstated as an employee of the Fairborn Municipal Court is now before this court for the third time. Lewis is appealing this time from the decision of the Common Pleas Court of Greene County, Ohio, which approved the finding of the Fairborn Personnel Advisory Board ("Board") that Lewis was an unclassified employee and, therefore, could be and was terminated at the will of the judge of the court. The history of this case and the findings of the common pleas court, which are the subject of this appeal, are set forth concisely in the relevant portions of the opinion of that court, as follows:
 Lewis was originally hired as the Community Restitution Coordinator in 1992 by Judge Fodal after he informed the Fairborn City Council that he wished to expand the community restitution program of the Fairborn Municipal Court. The program was designed to reduce the population of the Greene County jail by permitting persons to perform community service in lieu of jail time. No competitive examination was given for the position and Lewis was appointed to the position by Judge Fodal. The job required her to set and obtain work sites for offenders sentenced to the program by the Court. Lewis performed no supervisory duties and no probation officer duties.
 In 1995, Judge Barber was elected to the Fairborn Municipal Court bench. Judge Barker [sic] eliminated the positions of five Fairborn Municipal Court employees, including Lewis. She filed a notice of appeal with the Fairborn Personnel Advisory Board which ruled that it had no jurisdiction to hear an appeal because the position was unclassified. This Court dismissed Lewis' appeal also upon the basis that Lewis was an unclassified employee. The Greene County Court of Appeals reversed and remanded the case to the Court for a hearing upon the merits.
 On May 17, 1997, the Court held a hearing where it found that Lewis was in the unclassified civil service. That decision was appealed to the Court of Appeals which remanded the case to the Personnel Advisory Board to find whether it was impracticable to test for the position of Community Restitution Coordinator. The Board met on January 14, 1998 and discussed the position of probation officer and Community Restitution Coordinator. The Board concluded that, for six reasons, the position was impracticable to test and was, therefore, unclassified. The Plaintiff now appeals from that decision.
* * *
 The Court finds that the decision of the Personnel Advisory Board is supported by credible, reliable and substantial evidence. The qualities which would make the applicant successful in the job are impracticable to test. The position requires loyalty and integrity to the judge and those qualities are not subject to competitive testing. The Court finds that the position is impracticable to test and that Lewis' former position is an unclassified position. Final judgment is entered in favor of the Defendant, City of Fairborn. (Docket 25).
Lewis' first appeal to the court was from a decision of the trial court which dismissed her appeal from the Board's decision that denied jurisdiction to appeal her termination as Community Service Coordinator because it concluded that she was an unclassified employee. Lewis' appeal to the court from that decision was dismissed without a hearing, and we simply remanded the case in our December 13, 1996 decision back to the trial court for purposes of holding a hearing. Upon remand, the trial court did hold a hearing and then held on May 30, 1997, and again found her former position unclassified on five different grounds, one of which was that her position requires a high degree of "trust, competence, reliance, integrity and fidelity," citing State ex rel Charleton v. Corrigan (1988),36 Ohio St.3d 68. Lewis appealed from that decision, and again we reversed, but this time on the sole ground that under the charter of the City of Fairborn, the Board had to first find, as an issue of fact, that it was not practicable to test for the position of Community Restitution Coordinator in order to support the Board's conclusion that Lewis is in an unclassified position. We concluded in our opinion in the appeal as follows:
 Lewis has urged us to enter a judgment finding that she was a classified employee based on the nature of her job responsibilities. Because the record still does not contain evidence on the pivotal issue regarding classification of Fairborn's court employees (other than clerks and bailiffs) — i.e., the impracticability of testing — we decline to enter such a judgment. Rather, we conclude that the appropriate resolution of the matter at this point is to remand to the Personnel Board for it to make the finding which it ought to have made in the first instance as to whether it is impracticable to test for the position of Community Restitution Coordinator. If the Personnel Board finds that one's merit and fitness for the position of Community Restitution Coordinator cannot be determined by examination, then Lewis was an unclassified employee and had no right to appeal her termination. If, on the other hand, the Personnel Board finds that it is practicable to test for the position, then Lewis is entitled to pursue the remedies available to a classified employee.
Lewis v. Fairborn (Dec. 12, 1997), Greene App. No. 97 CA 66, unreported.
Following the remand to it, the Board met on January 14, 1998, to consider the issue and, after considerable discussion (evidenced by a single spaced transcript of fourteen pages), the Board issued its findings and conclusions as follows:
 The Personnel Advisory Board, after a thorough review, found that:
 1) The Community Restitution Coordinator reports directly to the Judge.
 2) This position involves trust, integrity, and loyalty to the Judge, and any defiance or deviance could lead to embarrassment and loss of reputation to the Judge.
 3) This position can not easily be the subject of a test due to the fact that no good test exists to establish how a person deals in crisis situations, or deals with tough offenders, or how a person deals with handling multiple tasks and priorities.
 4) This position requires the handling and safeguarding of secured documents and some handling of public monies.
 5) This position requires the supervision of clients and the monitoring of their assigned activities.
 6) This position rated a total of 480 factoring points which places it into pay grade 138 which is equivalent to other professional positions within the City.
 Based upon the above, the Personnel Advisory Board unanimously voted to find the position of Community Restitution Coordinator an unclassified position and not conducive to competitive testing.
The most important finding of the Board in support of its decision is the second one, which sets forth a fiduciary relationship between the judge of the court and the Community Restitution Coordinator. This finding is supported by testimony recorded in the transcript of the Board's meeting, for example, to-wit:
 TROUT, CITY OF FAIRBORN PERSONNEL MANAGER: Does the person in this position maintain a high degree of trust, confidence, reliance, integrity and fidelity which is necessary for employment, especially with that of an elected official? And I went through and I took each one of these — trust, confidence, they must be able to rely on these people, integrity and of course, fidelity. And with trust, I said of course any person has to have trust in an employee. But I was talking about an elected official, and specifically when I'm talking about Community Restitution Coordinator and Probation Officer because they perform much of their duties outside of the office. I mean they are in the public eye a lot out there. And they have to be trusted and that's what they're doing, you know. And I said the Judge also has to trust these people when they come back because they're giving recommendations, and I think you all might want to add something to this. Is there anything? I mean that's why we have you all here — hop in any time. (Tr. 2-3).
 TROUT: If the person in this position did not perform their job properly, would the results of this action cause great embarrassment which could affect the reappointment or election of the management-level person or for the department or division? And I would say definitely. And again, they're working outside the Court. If they would let some of these people slide, or not follow through on what the Judge said, and, you know, the newspaper got a hold of it, I suppose it could really be quite an embarrassment to the Judge. (Tr. 7).
 GRAF, MEMBER OF THE BOARD: It would be hard to test for loyalty, and that's what the Judge demands. If she can't expect loyalty from these two people, she has to be able to get rid of them immediately. Like we've indicated in here, they make or break the Judge, so to speak. They can make the Judge look bad in almost every case if they wanted to if they have no loyalty. So how do you test for loyalty? You have to protect the Judge, the Judge has to protect the Court, so the Judge has to have immediate ability to rid herself of these people if she has to. (Tr. 7).
Lewis appealed the Board's determination again back to the trial court, and we already quoted from its decision. In her appeal from that decision to this court, Lewis sets forth the following sole assignment of error:
 THE DECISION OF THE COMMON PLEAS COURT OF GREENE COUNTY, WHICH DETERMINED THAT APPELLANT WAS IN THE UNCLASSIFIED SERVICE, IS NOT SUPPORTED BY RELIABLE, PROBATIVE AND SUBSTANTIAL EVIDENCE TO PROVE THAT IT WAS IMPRACTICABLE TO TEST FOR THE POSITION OF COMMUNITY RESTITUTION COORDINATOR.
Lewis cites personnel manager Trout's testimony to the trial court that a certain number of the elements of the job she held can be tested for and, therefore, the court's decision is not supported by reliable, probative, and substantial evidence.
The Ohio Supreme Court, however, has decided on more than one occasion that public positions which require the trust and competence of the appointing officer cannot be objectively tested for and necessarily have to be in the unclassified service. See, e.g., State, ex rel. Bryson v. Smith (1920), 101 O. S. 203, where the court stated at 208:
 It is not easy to understand how merit and fitness of the occupant of this position can be determined by competitive examination, because by far the largest and most important element of such fitness is that of integrity and character. That is not a thing to be discovered by competitive examination. It does not proclaim itself. It is a fitness that is "ascertained" by close and intimate knowledge of the applicant and opportunity for observation of him.
And again, on page 209-210:
 Some of the elements which are conceded to be essential to the occupant of this position, such as experience, knowledge, or technical equipment, can of course be determined by competitive examination, but the confidential and fiduciary relation is paramount. This paramount condition, as pointed out, cannot be determined by examination, but must be determined by the personal knowledge or the personal confidence of the appointing officer in the vigilance and faithfulness of the deputy or the one occupying the fiduciary relation.
Later, the supreme court considered the relationship between the Director of Law of the City of Cleveland and his assistants, stating:
 The position of assistant director of law is necessarily a position of trust and confidence. The director of law must answer to the people for the shortcomings of his assistants. Is it the policy of the law that he should be permitted to select as his assistants those individuals in whom he has confidence — confidence in their ability, confidence in their honesty, confidence in their personality; or must he take unto himself a coterie of assistants tested by an examination that means nothing in so far as the fitness of the individual to perform the duties of the office is concerned?
State, ex rel v. Kerr (1932), 126 Ohio St. 26, 30. Kerr was followed by the supreme court in DeWoody v. Underwood (1940),136 Ohio St. 575 in again holding that where officials occupy a judiciary relation to their principal, it is not practicable to test their merit and fitness by competitive civil service examinations.
A common pleas court is entrusted with a rather broad scope of review of a decision by an agency, but the standard of review by an appellate court of the trial court's decision is much narrower, and is "limited to a determination whether, as a matter of law, we can say that there did exist a preponderance of reliable, probative, and substantial evidence to support" the agency's decision to dismiss the appellant.Dudukovich v. Housing Authority (1979), 58 Ohio St.2d 202, 208, 12 O.O.3d 198, 202. Based upon the record of the Board's deliberations as well as the evidence before the trial court, we find that there was more than a preponderance of reliable, probative, and substantial evidence to support the Board's finding that the position formerly occupied by Lewis was in a fiduciary relationship with the judge of the court and, as such, cannot be practicably tested in an examination.
The assignment of error is overruled.
The judgment is affirmed.
BROGAN, J. and FAIN, J., concur.
Copies mailed to:
Jeffrey M. Silverstein Gerald E. Schlafman Hon. Thomas M. Rose