OPINION
In July 1996, the Ohio Civil Service Employees Association, AFSCME Local 11, AFL-CIO ("OCSEA"), filed a petition for representation election and a petition for amendment of certification with the State Employment Relations *Page 98 
Board ("SERB"). OCSEA sought to represent employees of the State of Ohio Office of the Public Defender ("OPD") classified as Assistant Public Defender 1, 2, 3 and 4, and to add these classifications to State Bargaining Unit 14 ("Unit 14"). The state objected, contending, in part, that the Assistant Public Defenders ("APDs") are fiduciaries and, therefore, not "public employees" under R.C. 4117.01(C)(9).
In February 1997, a hearing officer recommended that SERB dismiss the OCSEA petitions, based on a 1985 stipulation that APDs are fiduciary employees. Upon objection, SERB disagreed and remanded the matter for further hearing to determine whether any APDs act in a fiduciary capacity under R.C. 4117.01(C)(9), and whether any APDs are supervisory employees under R.C. 4117.01(F). SERB also instructed that, if any APDs were found not to be fiduciaries or supervisors, then the hearing officer should determine whether Unit 14 would be appropriate, and, if so, whether the classifications should be added by means of opt-in election or amendment of the certificate.
In August 1997, the hearing officer found that none of the APDs are fiduciary employees, that all APD 4s are supervisory employees, and that some APD 3s are supervisory employees. The hearing officer concluded that all APD 1s and 2s should be added to Unit 14, as well as six APD 3s.
The state objected. In November 1997, SERB issued a decision finding that APDs 1, 2, 3 and 4 are fiduciary employees. SERB also found that APD McHenry is a supervisor. Because all APDs were, therefore, excluded from the definition of "public employee," SERB did not address the bargaining unit nor the method of adding classifications to it. With one member dissenting, SERB dismissed OCSEA's petitions.
OCSEA then filed a notice of appeal to the common pleas court, pursuant to R.C. 119.12. Following proceedings related to jurisdictional issues, including an appeal to this court, the trial court held a hearing. In August 1999, the trial court announced its decision, upholding SERB's decision because it was "supported by reliable, probative, and substantial evidence and is in accordance with law." The trial judge further stated:
 * * * I WOULD ADD TO THAT BY SAYING THAT THE LATITUDE AFFORDED ASSISTANT PUBLIC DEFENDERS IN THEIR UNRESTRICTED HOURS SPENT IN SKULL SESSIONS, FILING, WRITING, RESEARCHING, AND ARGUING THEIR CASES AS DESIGNEES AND FIDUCIARIES OF THE OHIO PUBLIC DEFENDER BODIKER TOTALLY OVERSHADOWS THE RESTRICTIONS ON THEIR DISCRETION OR ACTIVITIES IMPOSED BY THE BUREAUCRACY IN WHICH THEY OPERATE.
 FURTHER, SOME SUPERVISION DOES NOT EQUATE TO A LACK OF TRUST OR A LACK OF DISCRETION OR A LACK OF INDEPENDENCE BUT MORE REASONABLY TO TEAM BUILDING AND *Page 99 
COORDINATION IN DEALING WITH THESE LIFE AND DEATH CASES INVOLVING MULTIPLE ATTORNEYS, MULTIPLE CASES, AND THE DEADLINES OF CRIMINAL LITIGATION.
On August 30, 1999, the common pleas court filed a judgment entry adopting the above-quoted statements in the transcript of record.
In September 1999, OCSEA filed the present appeal, stating three assignments of error:
 I. The Court of Common Pleas Erred by Failing to Apply A Quasi-Judicial Standard of Review of SERB's Order.
 II. The Court of Common Pleas Erred In Upholding SERB's Decision That The Assistant Public Defenders Are Fiduciaries Pursuant To O.R.C. 4117.01(C)((9) And Thus Excluded From Eligibility As A "Public Employee" Under Ohio Collective Bargaining Law.
 III. The Court of Common Pleas Erred In Upholding SERB's Decision That Assistant Public Defender 3, Jerry McHenry, Is A "Supervisory Employee" And Thus Not Deemed A Public Employee As Defined In O.R.C. 4117.01(F).
The APDs in issue in this appeal are the status of all APDs classified as 1 and 2 and the ones classified as 3 who were found by the hearing officer to not be supervisors. In other words, appellant seeks an adoption of the hearing officer's decision. There is no assertion that the APD 3s found to be supervisory employees and the APD 4s were improperly excluded with the exception of APD 3 McHenry who was also found by SERB to be a supervisor.
First, the parties agree that OPD is a "public employer" that employs attorneys to represent criminal defendants. Of the agency's one hundred fifty employees, about sixty are APDs assigned to represent defendants at trial, on appeal and in post-conviction proceedings. These attorneys are classified as APDs 1, 2, 3 or 4. As stated before, all APD 4s and five APD 3s are conceded to have supervisory duties and, thus, are ineligible to be part of a bargaining unit.
The primary issue as to the APD 1s, 2s and remaining APD 3s involved in this appeal is whether they are "fiduciary" employees.
The evidence before SERB was that APDs exercise independence and discretion in defending their clients, including the determination of strategies, interviewing clients, researching their cases, writing motions and briefs, working with investigators, appearing in court and conducting trials. For example, APDs travel throughout the state, incurring overnight expenses, without approval. They have flexibility in arranging their hours and enjoy the option of "flex-time" scheduling and receive "comp time" for overtime hours. APDs speak independently to the media about their cases, and lower-classification APDs have met independently with members of a foreign government regarding the defense of *Page 100 
one of its citizens. There was evidence that APDs direct the work of paralegals, secretaries and clerks, and that APDs view themselves as having broad discretion and ultimate responsibility for their clients and cases despite bureaucratic restrictions.
However, there was undisputed evidence that APDs have little or no discretion in regard to matters involving the management and administration of the agency, and that they are not entrusted with authority to spend significant funds or speak for the agency. For example, there was evidence that APDs do not testify before the legislature regarding the policies and practices of the agency, nor are they authorized to speak with the media regarding policy matters. APDs need approval for out-of-state travel and must follow rules for use of state vehicles. APDs cannot enter contracts to hire experts. There was evidence that APDs who want to withdraw from a case due to a conflict of interest cannot do so without approval. All their written pleadings, briefs, motions, etc., must be co-signed by the head of the agency or his designee. After 1994, the OPD initiated a time-keeping policy under which APDs no longer enjoyed the discretion to spend as much time as they wished on each case. There was evidence that APDs could no longer choose unilaterally to have in-house co-counsel and could not attend continuing legal education without approval. There was also testimony that the use of compensatory time is restricted, that APDs do not choose which cases will be assigned to them, and that APDs have less freedom in directing paralegals and secretaries than they enjoyed in 1985. In short, there was undisputed evidence that, although APDs exercise broad discretion in representing their clients, they do not exercise discretion nor assist Mr. Bodiker in running the administrative agency.
In addition to the evidence regarding fiduciary activities, there was also evidence regarding the supervisory activities of individual APDs (some 3s and all 4s), including evidence regarding their responsibility for hiring and directing the work of other employees and their role in reviewing performance of both attorneys and staff members.
In the present appeal, the common pleas court found that SERB's decision "is supported by reliable, probative, and substantial evidence and is in accordance with law." See R.C. 119.12. The task of this court is to determine whether the trial court abused its discretion in reaching that conclusion. E.g., Lorain City Bd. of Edn. v. State Emp. RelationsBd. (1988), 40 Ohio St.3d 257.
Under R.C. 4117.01(C), various categories of state employees are excepted from the definition of "public employee" and are, therefore, not subject to the collective-bargaining provisions in R.C. Chapter 4117: *Page 101 
 (C) "Public employee" means any person holding a position by appointment or employment in the service of a public employer * * * except:
* * *
(6) Confidential employees;
(7) Management level employees;
 (8) Employees and officers of the courts, assistants to the attorney general, assistant prosecuting attorneys, and employees of the clerks of courts who perform a judicial function;
 (9) Employees of a public official who act in a fiduciary capacity, appointed pursuant to section 124.11 of the Revised Code;
(10) Supervisors[.]
R.C. 4117.01 provides definitions, including the following:
 (F) "Supervisor" means any individual who has authority * * * to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other public employees; to responsibly direct them; to adjust their grievances; or to effectively recommend such action, if the exercise of that authority is not of a merely routine or clerical nature, but requires the use of independent judgment * * *[.]
* * *
 (K) "Confidential employee" means any employee who works in the personnel offices of a public employer and deals with information to be used by the public employer in collective bargaining; or any employee who works in a close continuing relationship with public officers or representatives * * *.
 (L) "Management level employee" means an individual who formulates policy on behalf of the public employer, who responsibly directs the implementation of policy, or who may reasonably be required on behalf of the public employer to assist in the preparation for the conduct of collective negotiations, administer collectively negotiated agreements, or have a major role in personnel administration. * * *
R.C. 4117.01 does not define "fiduciary capacity." Further, no reported decisions define the term as used in R.C. 4117.01(C). However, numerous decisions address the meaning of "fiduciary relationship" as used in R.C. 124.11, which defines the categories of state employees who are classified civil service employees. In State ex rel. Charlton v.Corrigan (1988), 36 Ohio St.3d 68, 70-71, the Ohio Supreme Court has commented that judicial decisions analyzing the nature of the fiduciary relationship under R.C. 124.11 have "invariably characterized the relationship as one of trust and confidence," *Page 102 
stating that it is "more than the ordinary relationship of employer and employee." The court further stated:
 * * * [I]n determining whether a fiduciary relationship exists between a public official and his appointed employees, pursuant to R.C. 124.11(A)(9), which would exempt such employees from civil service status, emphasis should be placed upon whether the assigned job duties require, as essential qualifications over and above technical competency requirements, a high degree of trust, confidence, reliance, integrity and fidelity. [Id.]
One method of determining whether the employee acts in a fiduciary capacity is to examine the duties assigned to the employee. Id. A "great degree of discretion in carrying out one's assigned duties may indicate a trust relationship," although the "trust relationship" is among the highest of fiduciary relationships. However, there are "a plethora of other circumstances within the law of fiduciaries which might also indicate the existence of a fiduciary relationship." Id. Therefore, the courts may inquire "whether there is some element within the overall structure of the employment relationship which makes integrity and loyalty to the employer an essential job qualification, over and above technical or competency requirements." Id. at 71.
When an employee's duties are routine, the employee is not a fiduciary. Id. at 71-72. For example, the mere handling of money or balancing an account does not, by itself, demonstrate a fiduciary relationship. In contrast, the authority to make discretionary investment and banking decisions shows a "highly fiduciary" relationship. Id. For example, the discretion of deputy treasurers to negotiate payment plans for individual taxpayers or to investigate particular taxpayers are duties that show a fiduciary relationship. Id. at 73.
A factor for consideration is whether the employees have access to "confidential and sensitive" information. When employees have control of or access to such information, a high degree of trust must be reposed in them. Another factor is whether the employees make daily discretionary decisions as to resolving problems of individuals who contact the agency. Id. at 73. For example, deputy treasurers who make "daily discretionary decisions as to how to resolve taxpayer problems require that they be persons of higher than normal reliability." Id. at 73. In contrast, secretaries whose positions involve "routine and non-individualized discretion," and who are not legal or personal secretaries, do not have the degree of discretion or trust to be considered fiduciary employees. Id. The Supreme Court has instructed that, to determine the kind of relationship that exists, "courts should focus the analysis upon whether the duties assigned possess a routinized character or are assigned *Page 103 
pursuant to criteria exemplifying that of a fiduciary." Id. at 71.
In addition, we note that R.C. 4117.01, at issue here but not at issue in Corrigan, governs whether employees may engage in collective bargaining with their employer. Accordingly, when considering an employee's status under R.C. 4117.01, the courts should also focus on another factor, the fundamental purpose of the legislature in excluding some employees from collective bargaining. When a state agency is bargaining with its employees in regard to terms and conditions of employment, those who share the administrative, managerial, and fiduciary duties of the agency have interests that should be more aligned with the agency as employer. In order for the head of an agency to delegate administrative, managerial and fiduciary duties to employees effectively, he or she must feel confident that these employees' interests are aligned with the employer's interest in implementing agency policies and goals, and must have confidence that, when sitting at the bargaining table, these highly trusted employees will not have divided interests. In other words, when collective bargaining is at issue, as it is pursuant to R.C. 4117.01, the court must consider whether the employees perform the type of duties and share the type of responsibility that would make it inappropriate for them to have personal interests at stake that may be in conflict with that of the employer during bargaining activities, such as contract negotiations, grievance proceedings, etc.
In the present action, the evidence shows that, like most litigation attorneys, the APDs exercise substantial discretion in their efforts to resolve the problems of their clients. That is, their assigned duties involve the exercise of individualized discretion on behalf of the criminal defendants they serve. However, the evidence does not establish that they exercise individualized discretion on behalf of the agency they serve. They do not act as fiduciaries on Mr. Bodiker's behalf. Although some of the APD 3s and 4s have supervisory duties that place them within the definition of "supervisors" and exclude them from bargaining as "public employees," there is insufficient evidence in the record to demonstrate that, in regard to fiduciary activities, APDs have duties that require special loyalty to the employer. Nor is there sufficient evidence to demonstrate that APDs share the type of responsibility for running the agency that would render it inappropriate for them to engage in collective bargaining with the employer. Although their daily activities require them to litigate reliably, with proper discretion, and with loyalty to their client defendants — as must any attorney representing a client under the Code of Professional Responsibility — their duties do not require them to act with particular fidelity to the employer as employer, nor to exercise the type of discretion and loyalty and trustworthiness that must *Page 104 
be exercised by those employees who participate in the administration of the agency. The special loyalty is instead owed to their clients.
Accordingly, we conclude that the common pleas court abused its discretion in its construction of the term "fiduciary capacity" in R.C.4117.01, in its finding that there was substantial evidence to support SERB's finding that attorneys employed by the OPD as APDs act in a "fiduciary capacity" and are, therefore, not "public employees." The fact that the Public Defender wishes to hire highly competent attorneys in whom he has trust and confidence does not make them his fiduciaries within the meaning of R.C. 4117.01(C)(9), where the issue is different than that of R.C. 124.11. APDs owe integrity, competence and loyalty to their clients, but no "special" relationship that is more than the ordinary relationship of an employer and employee so far as the interests sought to be protected by R.C. Chapter 4117 are concerned. Attorneys employed by the Public Defender are not engaged in litigating the interests of the Public Defender, but that of the client. The Public Defender does not delegate any significant fiduciary duties of his office to the APDs, but retains the control of office decisions unrelated to competent representation of clients which is required to be vested in the hands of specific lawyers assigned to the cases. The fact that they have substantial or even complete responsibility in making procedural and trial decisions on behalf of their clients does not make them fiduciaries of the Public Defender to exclude them from being included from eligibility as a "public employee" under the Ohio Collective Bargaining Laws. These employees were supervised to the extent necessary to protect any "special" interests of the Public Defender's Office. See Rarick v.Cty. Commissioners of Geauga Cty. (1980), 63 Ohio St.2d 34.
However, in regard to that part of the decision in which the common pleas court affirmed SERB's findings as to Jerry McHenry being a supervisory employee, we find no abuse of discretion. There was reliable, probative and substantial evidence that APD McHenry had significant responsibility for hiring, evaluating and directing the work of OPD employees. McHenry reviews and critiques the work of attorneys, secretaries and paralegals in formal written evaluations. He is a "rater" of them. He confers individually with the Public Defender on a "pretty regular basis" regarding cases requiring "executive horsepower."
Appellant's third assignment of error is overruled.
Appellant's second assignment of error is sustained. Appellant's third assignment of error is overruled. Appellant's first assignment of error is sustained as to APD 1s, 2s and all 3s involved in this appeal except APD 3 McHenry. The judgment of the Franklin County Court of Common Pleas is reversed, except in *Page 105 
regard to APD McHenry. The case is remanded to the trial court for further procedure in accordance with this opinion.
Judgment reversed and cause remanded.
BRYANT, P.J., and BROWN, J., concur.
McCORMAC, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.