This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant/Cross-Appellee, Ruth Crow, appeals the judgment of the Summit County Court of Common Pleas, which granted in part the motion for summary judgment of Appellee/Cross-Appellant, Fred Martin Motor Co. Appellee filed a cross-appeal. We affirm in part, reverse in part, and remand for proceedings consistent with this opinion.
{¶ 2} Appellant filed her complaint on November 3, 2000, in the Summit County Court of Common Pleas. Discovery followed. Subsequently, both parties filed motions for summary judgment. On November 16, 2001, the trial court partially granted Appellant's motion for summary judgment; the trial court denied summary judgment on Appellant's remaining claims. Additionally, the trial court partially granted Appellee's motion for summary judgment. A bench hearing was held on the remaining issues. Judgment was granted to Appellant in the amount of $4,000 compensatory damages and $15,903.25 in costs and attorney fees.
{¶ 3} Appellant timely appealed raising four assignments of error for our review. Appellee cross-appealed raising four cross-assignments of error. Appellant's assignments of error and Appellee's cross-assignments of error will be rearranged and consolidated for ease of review.
 ASSIGNMENT OF ERROR I
{¶ 4} "The trial court erred as a matter of law when it awarded summary judgment to [Appellee], and failed to award summary judgment to [Appellant], as to [Appellee's] breach of fiduciary duty, which further constituted an act or practice in knowing violation of the Consumer Sales Practices Act."
 ASSIGNMENT OF ERROR II
{¶ 5} "The trial court erred as a matter of law when it awarded summary judgment to [Appellee], and failed to award summary judgment to [Appellant], as to [Appellee's] violations of [R.C. 1345.02], as established by Ohio Admin. Code 109:4-3-16(B)."
{¶ 6} Appellant appeals the trial court's decision which partially granted summary judgment in favor of Appellee. Specifically, Appellant maintains that summary judgment should not have been granted on the issues of fiduciary duty and Consumer Sales Practices Act (CSPA) violations. Appellant's contentions have merit.
{¶ 7} Pursuant to Civ.R. 56(C), summary judgment is proper if: "(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v. Wean United, Inc. (1977),50 Ohio St.2d 317, 327. An appellate court reviews a trial court's granting of summary judgment de novo. Grafton v. Ohio Edison Co. (1996),77 Ohio St.3d 102, 105; Klingshirn v. Westview Concrete Corp. (1996),113 Ohio App.3d 178, 180. Any doubt is to be resolved in favor of the non-moving party. Viock v. Stowe-Woodward Co. (1983), 13 Ohio App.3d 7,12.
{¶ 8} The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and is to identify portions of the record that demonstrate the absence of genuine issues of material fact as to an essential element of the non-moving party's claims. Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. The burden will then shift to the non-moving party, to offer "specific facts showing that there is a genuine issue for trial[.]" Id. See, also, Civ.R. 56(E). The non-moving party may not rest on the mere allegations and denials in the pleadings, but must submit some evidentiary material showing a genuine dispute over the material facts. Dresher, 75 Ohio St.3d at 293.
 Fiduciary Relationship
{¶ 9} In her first assignment of error, Appellant asserts that the trial court erroneously granted Appellee's motion for summary judgment regarding Appellant's breach of fiduciary duty claim. We agree.
{¶ 10} When alleging a breach of fiduciary duty, a plaintiff must prove the existence of a duty arising out of a fiduciary relationship, failure to observe that duty, and injury resulting proximately therefrom. Culbertson v. Wigley Title Agency, Inc., 9th Dist. No. 20659,2002-Ohio-714, at ¶ 24, citing Strock v. Pressnell (1988),38 Ohio St.3d 207, 216. In the absence of a showing of a fiduciary relationship, one will not owe fiduciary duties to another. Culbertson at ¶ 24, citing In re Termination of Employment (1974), 40 Ohio St.2d 107,115. A fiduciary relationship entails a "special confidence and trust."Culbertson at ¶ 24, quoting In re Termination of Employment,40 Ohio St.2d at 115. This confidence and trust "is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust." Culbertson at ¶ 24, quoting In re Termination of Employment, 40 Ohio St.2d at 115.
{¶ 11} Fiduciary relationships may arise from a formal agreement or de facto from an informal relationship, if the parties understand that a special trust or confidence has been reposed. Culbertson at ¶ 24, citing Cairns v. Ohio Sav. Bank (1996), 109 Ohio App.3d 644, 649, citingUmbaugh Pole Bldg. Co. v. Scott (1979), 58 Ohio St.2d 282, paragraph one of the syllabus. An informal relationship cannot be unilateral in order for a fiduciary relationship to arise. Culbertson at ¶ 29.
{¶ 12} In the instant case, the record reveals evidence of an understanding of such an informal relationship. On November 11, 1998, Appellant went to Appellee's car dealership upon seeing their advertisement in The Beacon Journal. At her deposition, Appellant testified that Mike Scarbrough, an employee of Appellee, provided her with an application to purchase credit life insurance and credit disability insurance, from Harvest Life Insurance Company ("Harvest Life"), when negotiating the purchase of a 1995 Ford Windstar from Appellee. He instructed her to "[r]ead it and sign it, and to [her] best knowledge, check [her] health[.]" Appellant stated that she checked "Yes" because she had a heart condition. Appellant then entrusted Appellee to process and forward the signed paperwork and insurance premium payment to Harvest Life.
{¶ 13} Under the assumption that she was insured, Appellant made monthly premium payments for the insurance coverage. Appellant first learned that her application was denied by Harvest Life when she began calling around, in late 1999, to receive insurance papers in order to pay her bills. Appellant explained that she "called up to get [Appellee] *** to send [her] insurance papers that [she] could fill out so [she] could get paid on [her] van, and [she] waited and waited and [she] never [received anything.]" Subsequently, Appellant called Harvest Life and was instructed to direct her inquiries to Appellee. She contacted Appellee again, and was then informed that a message would be left for Mr. Scarbrough. It was not until November of 1999, that Appellant was informed that she was uninsured; she could not recall whether Harvest Life or Appellee relayed this information to her. On November 13, 1999, Appellee forwarded Appellant's premium payments to her creditor.
{¶ 14} Appellee produced a letter, dated January 7, 1999, which was on the letterhead of Harvest Life. The letter, which was addressed to Appellant and contained her correct address, stated that Appellant's insurance application had been denied and that her "premium refund amount [would] be sent directly to [her] creditor within the next two to three weeks." However, Appellant asserted that she never received a letter indicating that her application had been denied. Appellant testified that she regularly receives her mail and has had no knowledge of any problems.
{¶ 15} Stephen Kapelka ("Kapelka"), a representative and employee of Appellee, testified that when an insurance application is denied, Harvest Life would notify Appellee and return the premium. Appellee would then forward the premium to the proper finance company if a lien on the car still existed. Kapelka explained that Appellee would not notify the customer that their money had been returned and that it was being forwarded accordingly. Kapelka stated that "generally" the funds would be returned "within thirty days" of notification. Kapelka was unable to explain why Appellee was in possession of the January 7, 1999 letter from Harvest Life which was addressed to Appellant, as there was no "cc" indication on the letter. Additionally, Kapelka was unable to explain the ten month delay in forwarding Appellant's refunded premium payments.
{¶ 16} Upon review of the record, we find evidence indicating that Appellee entered into an informal trust relationship with Appellant. SeeIn re Estate of Leiby, (1952), 157 Ohio St. 374, 382 (finding respondent bore a trust relationship to her employer while handling monies under instructions to disburse pursuant to her employer's direction). Consequently, Appellee's motion for summary judgment, as it related to fiduciary relationships, should not have been granted. The trial court erred in awarding summary judgment to Appellee. Accordingly, Appellant's first assignment of error is sustained.
R.C. 1345.02 and Ohio Admin. Code 109:4-3-16(B) Acts
{¶ 17} In her second assignment of error, Appellant contends that the trial court erred in granting Appellee's motion for summary judgment on the alleged R.C. 1345.02 violations. Appellant's assignment of error is well taken.
{¶ 18} R.C. 1345.02 prohibits unfair and deceptive consumer sales practices. Specifically, no supplier may "commit an unfair or deceptive act or practice in connection with a consumer transaction." R.C.1345.02(A). "It is a deceptive act or practice in connection with a consumer transaction for a supplier, in the sale or offering for sale of goods ***, to make any offer in written or printed advertising or promotional literature without stating clearly and conspicuously in close proximity to the words stating the offer any material exclusions, reservations, limitations, modifications, or conditions. Disclosure shall be easily legible to anyone reading the advertising or promotional literature and shall be sufficiently specific so as to leave no reasonable probability that the terms of the offer might be misunderstood." Ohio Admin. Code 109:4-3-02(A)(1). The Code further provides that "[a] statement of exclusions, reservations, limitations, modifications, or conditions which appears in a footnote to an advertisement to which reference is made in the advertisement by an asterisk or other symbol placed next to the offer being limited is not inclose proximity to the words stating the offer." (Emphasis added.) Ohio Admin. Code 109:4-3-02(C). Additionally, the O.A.C. states in pertinent part: "It shall be a deceptive and unfair act or practice for a dealer *** in connection with the advertisement or sale of a motor vehicle, to *** [a]dvertise an interest rate where the extension of credit is contingent upon qualification without including the disclosure `subject to approved credit' or words of similar import[.]" Ohio Admin. Code 109:4-3-16(B)(1).
{¶ 19} Appellant purchased a vehicle from Appellee on November 9, 1998. Appellant alleges that she did not receive the benefit of 2.9% fixed rate financing nor the 1995 Ford Windstar van at the sales price and monthly payment terms, as advertised in Appellee's November 8, 1998 advertisement.
{¶ 20} The November 8, 1998 advertisement in The Beacon Journal offered "2.9% APR FIXED RATE FINANCING on every vehicle in stock up to 60 months or get our big discount[.]" This offer, which appeared in the upper left-hand corner of the full-page ad, contained a " " next to the word financing. The symbol was explained in a footnote paragraph at the bottom of the advertisement. This paragraph was seven lines long and typed in a much smaller font. The fourth line started " Financing through dealer Example: 1995 Jeep Cherokee $12,995. 10% Cash or trade down, 60 monthly payments of $215.00 at 2.9% A.P.R. plus tax, tag and title. Wranglers and Factory Employee Purchase Plans Excluded. Not in conjunction with any other offer or incentive. From Was Price." The explanation made no mention that the offer was "subject to approved credit."
{¶ 21} Appellant asserts that she also sought to take advantage of the sales price and terms advertised by Appellee for the 1995 Ford Windstar Van. The same November 8, 1998 advertisement provided for "$0 DOWN AVAILABLE! '95 Ford Windstar 7 Passenger Van Auto. Trans., V6, Loaded, Extra Nice! Sale Price: $8,995 $109 per mo." Appellee also attempted to limit this offer with the use of asterisks and symbols. "$0 DOWN AVAILABLE" appears to be limited by the statement "With approved credit. Not in conjunction with any other offer. From Was Price." The $109 monthly payment is qualified with the statement "'95 and newer, with approved credit. 7.99% variable A.P.R., 35% cash or trade down payment plus tax and title, 66 months, payment x term = total note." These qualifications and limitations are also included in the footnote paragraph at the bottom of the advertisement and typed in a much smaller font.
{¶ 22} Jack Lewis ("Lewis"), a Select Finance Specialist employed by Appellee, assisted Appellant on November 9, 1998. At his deposition, Lewis stated that he did not recall explicitly addressing the denial of the 2.9% A.P.R. financing offer with Appellant. He remarked, however, that the pertinent information was disclosed on her finance contract. Appellee also offered the "Work Sheet," used by Lewis while negotiating Appellant's purchase, into evidence. Kapelka testified that "work sheets" are used by salesmen when they begin initial negotiations.
{¶ 23} At her deposition, Appellant explained that Lewis began to discuss potential terms with her regarding the purchase of the 1995 Windstar. When the first set of terms were not agreeable to Appellant, she recalled Lewis explaining "we can do a better deal[.]" The various "deals" were recorded on the "Work Sheet." Appellant made several requests which were also included on the "Work Sheet." The terms she desired were listed on the back of the sheet: current automobile to be taken in a trade-in and the balance, title fees, and taxes paid in full, the first payment for the new automobile deferred for 30 days, no cash down, and $398 per month.
{¶ 24} The sales contract indicates that Appellant purchased the 1995 Ford Windstar from Appellee for a "sale price (including accessories) [of] $12,545.00." Appellant also traded in her 1992 Ford Tempo to facilitate the purchase. The purchase agreement notes that the "cash price of the vehicle has been raised 5,000.00 to cover [the] negative equity in trade-in vehicle." The negative equity on the vehicle was certified as $4,400.00. Appellant's down payment is recorded as $1,600.00. The contract further indicates that Appellant received an annual percentage rate of 18.99% and was to make 48 monthly payments in the amount of $385.22.
{¶ 25} Due to the assertions in Appellant's complaint, the evidence presented, and Appellee's November 8, 1998 advertisment, we conclude that Appellee failed to establish that it was entitled to judgment as a matter of law. See Temple, 50 Ohio St.2d at 327. Thus, the trial court erred in granting summary judgment to Appellee in regards to the alleged CSPA violations. Appellant's second assignment of error is sustained.
 ASSIGNMENT OF ERROR III
{¶ 26} "The trial court erred as a matter of law when it refused to award [Appellant] treble her actual damages for [Appellee's] violation of Ohio Admin. Code 109:4-3-02(A)(1)."
 CROSS-ASSIGNMENT OF ERROR I
{¶ 27} "The trial court erred as a matter of law in failing to find that [Appellant] suffered no actual, out-of-pocket damage as a result of the advertising violation, and therefore was only entitled to statutory damages in the amount of $200.00."
 CROSS-ASSIGNMENT OF ERROR II
{¶ 28} "In the alternative, even assuming [Appellant's] own bargained for terms of sale did not preclude her from securing the advertised discounts, the trial court erred as a matter of law in awarding [Appellant] in excess of her actual, out-of-pocket loss stemming from the advertising violation."
{¶ 29} In her third assignment of error, Appellant alleges that the trial court failed to triple her damage award, pursuant to R.C.1345.09(B), for Appellee's violations of R.C. 1345.02(A) and Ohio Admin. Code 109:4-3-02(A)(1). Conversely, Appellee argues that the trial court incorrectly determined Appellant's actual damages. Appellant's contentions have merit.
{¶ 30} For treble damages to be awarded pursuant to R.C. 1345.09(B), the act or practice at issue must have been declared deceptive or unconscionable, pursuant to R.C. 1345.05(B)(2), by a regulation promulgated by the Attorney General, or an Ohio court must have previously determined that the act or practice violated R.C. 1345.02 or 1345.03, and that court decision must have been made available for public inspection under R.C. 1345.05(A)(3).[1] Thus, if an administrative or common law rule declaring a specific act to be an unfair or deceptive practice is instituted prior to the time a defendant committed the same act, the court may award treble damages for violation of that rule. Estate ofCattano v. High Touch Homes, Inc., 6th Dist. No. E-01-022,2002-Ohio-2631, at ¶ 57.
{¶ 31} However, whether treble damages should be awarded is a legal issue for the trial court; "[t]he trial court is not free to `exercise its sound discretion in fashioning a remedy appropriate to the facts[.]" Stultz v. Artistic Pools, Inc., 9th Dist. No. 20189,2001-Ohio-1420, at 6-7, quoting Bierlein v. Alex's Continental Inn,Inc., (1984), 16 Ohio App.3d 294, 301; White v. Hornbeck, 9th Dist. No. 01CA0057, 2002-Ohio-3037, at ¶ 7, citing Snider v. Conley's Serv.
(June 12, 2000), 5th Dist. No. 1999CA00153. A consumer who has been the victim of deceptive acts or practices may choose between rescission or treble damages. R.C. 1345.09(B); Stultz, supra, at 6. "When a plaintiff has made its election for damages and has met the prerequisites for treble damages under R.C. 1345.09(B), `the statute does not make it discretionary for a trial court to award either actual damages or treble damages[.]'" Stultz, supra, at 6, quoting Armstrong v. Kittinger (Sept. 21, 1994), 9th Dist. Nos. 16124 and 16378, at 19.
{¶ 32} A review of the record in this case reveals that the trial court found Appellee committed an unfair, deceptive, or unconscionable sales practice by "providing material exclusions, reservations, limitations and conditions to its advertised offers without stating such terms clearly and conspicuously in close proximity to the words stating the offer[,]" in violation of Ohio Admin. Code 109:4-3-02. The court found actual damages in the amount of $4,000. Appellee maintains that the trial court erred in computing the actual damages figure. "Actual damages" are defined as "real, substantial, and just damages, or the amount awarded to a complainant in compensation for his actual and real loss or injury[.]" Black's Law Dictionary (6th Ed. 1990) 390. An appellate court reviews a lower court's decision in regards to damage calculations under the competent, credible evidence standard. Crabtreev. Metalworks Hydra-Assembly, Inc., 10th Dist. No. 02AP-450,2003-Ohio-13, at ¶ 10, citing C.E. Morris Co. v. Foley ConstructionCo. (1978), 54 Ohio St.2d 279, syllabus. Furthermore, "[i]f the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment." Crabtree at ¶ 10, quoting Estate of Barbieri v.Evans (1998), 127 Ohio App.3d 207, 211.
{¶ 33} Appellee does not dispute the fact that Appellant purchased the 1995 Windstar for $12,545. At the hearing, Kapelka testified that there was no indication in the purchase agreement that Appellant received the $3,000 canned good discount or the $1,000 gift certificate. Kapelka explained that the canned good offer was a discount on the sale price of a vehicle. Kapelka stated that Appellant never received the discount for the canned goods offer or the mall gift certificate. None of the canned goods Appellant brought to the dealership were taken by Appellee. Kapelka alleged that he did not know why Appellant was not given the opportunity to take advantage of either of these offers. Kapelka asserted that Appellant received a $1450 discount on the sale price of the van. However, he admitted that this discount was negotiated by Appellant "[and] not because she brought in the food under the promotion." The discount Appellant did receive was "separate and apart" from the canned goods promotion in Appellee's advertisement.
{¶ 34} Upon a thorough review of the record, we find that competent, credible evidence was presented establishing that Appellant's actual damages totaled $4000, as the trial court had calculated. SeeCrabtree at ¶ 10, citing C.E. Morris Co., 54 Ohio St.2d 279, at syllabus. Moreover, a reviewing court is to give evidence that interpretation which is consistent with trial court's findings. SeeCrabtree at ¶ 10, citing Estate of Barbieri,127 Ohio App.3d at 211. Therefore, Appellee's first and second cross-assignments of error are overruled.
{¶ 35} Consequently, Appellant was entitled to receive triple the amount of her actual damages. See Stultz, supra, at 6; Armstrong, supra, at 19. As conduct does not provide a defense to an award of treble damages, the trial court erred by concluding that "[t]he court does not find that the conduct was so egregious that the damages should be subject to triple the award." See Andrews v. Scott Pontiac Cadillac GMC, Inc.
(1991), 71 Ohio App.3d 613, 621. Accordingly, Appellant's third assignment of error is sustained.
 ASSIGNMENT OF ERROR IV
{¶ 36} "The trial court erred as a matter of law and abused its discretion when it failed to articulate which attorney hours were found not compensable and why; failed to articulate which compensable hours would not be paid at what the trial court expressly found to be counsel's reasonable hourly rate, and why; and failed to award a specific judgment for costs and litigation expenses, including expert witness fees."
{¶ 37} In Appellant's fourth assignment of error, the trial court's calculation of the award of attorney's fees, pursuant to R.C.1345.09(F), is contested. Appellant alleges that the trial court abused its discretion when reaching its decision.
{¶ 38} R.C. 1345.09(F)(2) provides for an award of reasonable attorney fees to the prevailing party in actions where a knowing violation of the CSPA occurs. Dobbins v. Kalbaugh, 9th Dist. Nos. 20714, 20920, and 20918, 2002-Ohio-6465, at ¶ 39. A trial court's determination in regards to an award of attorney fees will not be disturbed on appeal absent an abuse of discretion. Bittner v. Tri-CountyToyota, Inc. (1991), 58 Ohio St.3d 143, 146. An abuse of discretion is "more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Pons v. Ohio State Med. Bd. (1993),66 Ohio St.3d 619, 621.
{¶ 39} In Bittner, the Ohio Supreme Court described the proper procedure a trial court is to follow when determining the amount of reasonable fees to award pursuant to a CSPA violation.58 Ohio St.3d at 145. "[T]he trial court should first calculate the number of hours reasonably expended on the case times an hourly fee, and then may modify that calculation by application of the factors listed in DR 2-106(B)."Id. See, also, Dobbins at ¶ 40. This Court has previously explained that "[i]n order for an appellate court to conduct a meaningful review of the trial court's determination, the trial court must state the basis for its fee determination." Dobbins at ¶ 40, citing Bittner,58 Ohio St.3d at 146.
{¶ 40} In the instant case, the trial court awarded $15,903.25 in costs and attorney's fees to, Appellant. This is less than the total amount requested. Appellant contends that the trial court abused its discretion when reaching its decision.
{¶ 41} The trial court's entry awarding attorney fees does not clearly set forth the basis for its decision regarding the amount awarded. In making its final determination, the trial court apparently took into consideration several factors. Presumably, sufficient evidence was presented to support the award made to Appellant, however, it is not possible to determine precisely what factors the court considered and the weight, if any, it placed on those factors. See Bittner,58 Ohio St.3d at 146. Accordingly, we cannot conduct a meaningful review of the trial court's award. See Dobbins at ¶ 41. Thus, we reverse the judgment awarding attorney's fees and remand for further proceedings consistent with this opinion. Appellant's fourth assignment of error is sustained.
 CROSS-ASSIGNMENT OF ERROR III
{¶ 42} "The trial court abused its discretion by awarding attorney fees herein, as [Appellant] did not present sufficient evidence to establish that the newspaper advertising violation was caused by a knowing, intentional act on the part of [Appellee], or that said violation induced in [Appellant's] mind a belief not in accord with the facts of the transaction."
{¶ 43} In the third cross-assignment of error, Appellee argues that the trial court erred when it awarded attorney fees to, Appellant. Appellee asserts that the record does not support a finding that it knowingly violated the CSPA. We disagree.
{¶ 44} As previously noted, a trial court's determination in regards to an award of attorney fees will not be disturbed on appeal absent an abuse of discretion. Bittner, 58 Ohio St.3d at 146. Pursuant to R.C. 1345.09(F)(2), a trial court may award a successful consumer reasonable attorney fees when the supplier has knowingly committed an act or practice that is deceptive, unfair, or unconscionable. The supplier does not have to act with the knowledge that his conduct was in violation of the law. Einhorn v. Ford Motor Co. (1990), 48 Ohio St.3d 27, 30. The Ohio Supreme Court has stated that "`knowingly' committing an act or practice in violation of [R.C. 1345] means that the supplier need only intentionally do the act that violates the [CSPA]." Id. Acting "intentionally" means "[t]o do something purposely, and not accidentally." Black's Law Dictionary (6th Ed. 1990) 810.
{¶ 45} In its findings of fact, the court indicated that "the practice of [Appellee] in its failure to perform in accordance with its advertisement was deceptive and knowingly committed. [Appellant] drove up from Caldwell, Ohio, entered [Appellee's] premises in good faith carrying her 30 cans of food and received no discount." We find that the record clearly supports such a finding. Kapelka testified that Appellant never received the discount for the canned goods offer or the mall gift certificate. Additionally, none of the canned goods Appellant brought to the dealership were taken by Appellee. There is no indication that the actions of Appellee's salemen were accidental. As it is undisputed that Appellee did not provide Appellant with the advertised discount and gift certificate she was entitled to, we conclude that trial court's finding that Appellee acted knowingly when it failed to provide Appellant with such offers was supported by the record. The trial court did not abuse its discretion in awarding attorney fees. Appellee's third cross-assignment of error is overruled.
 CROSS-ASSIGNMENT OF ERROR IV
{¶ 46} "In the alternative, even assuming [Appellant] met her burden of proof to be considered for an award of attorney fees, the trial court abused its discretion by: (1) finding counsel for [Appellant's] $250.00 per hour attorney fee was a reasonable and customary fee charged for similar legal service in the locality, and (2) awarding counsel for [Appellant] more than $5,000.00 in attorney fees, on account of the limited success on the merits of [Appellant's] case in chief."
{¶ 47} In the fourth cross-assignment of error, Appellee contends that the court abused its discretion concluding that $250 per hour is a reasonable rate charged for comparable legal services in the locality. We disagree.
{¶ 48} When addressing the hourly rate charged by Appellant's counsel, the trial court stated that "Counsel for [Appellant] is experienced in litigation of consumer's rights and has trial experience over several years in both State and Federal Court systems. His effectiveness and experience were of benefit to the client and his expenditure of time in providing necessary work is not unreasonable. *** Fees of $250.00 are not exceptional or unreasonable in the greater Akron area for attorneys of his years of experience and qualifications. Consumer law is a specialty area that is not common among many legal practitioners. This court notes the distance that the client had to travel to retain counsel."
{¶ 49} At the hearing, Appellant's attorney testified that his rate for professional services is $250 an hour. He explained that this was the rate set by his firm and is the customary fee in cases involving consumer protection issues. Additionally, Attorney Laura McDowell ("McDowell") offered her testimony as an expert witness regarding fees customarily charged by attorneys. McDowell explained that she has been an attorney for fifteen years and has practiced in the Akron area her entire career. She stated that her practice consists primarily of consumer protection work; roughly 90% percent of her current practice is devoted to these issues. McDowell asserted that she is familiar with the billing practices, rates, and fees charged by attorneys who represent clients on a contingent fee basis in consumer protection cases in the Akron area. After reviewing records from the case, including depositions, pleadings, and billing statements, McDowell offered her expert opinion. She asserted that "the hourly rate of [Appellant's] counsel is very reasonable given his number of years in practice, his statewide experience, the number of very significant consumer cases that he has handled, and the varied types of cases that he has established law on here in the state of Ohio." McDowell further testified that a rate of $250 an hour is reasonable for an attorney to charge whether they are billing on a contingency fee basis or "guaranteed money per hour."
{¶ 50} Attorney Matthew Oby ("Oby") offered a conflicting opinion. Oby explained that he has been a practicing attorney in the Akron area for approximately fourteen years. His areas of practice included commercial litigation and CSPA litigation for both plaintiffs and defendants. Oby stated that it was his opinion that "$250 per hour for prosecuting a [CSPA] claim related to a single advertisement would be excessive and not reasonable." He opined that $125 per hour would be reasonable for this type of work done in the Summit County area.
{¶ 51} Upon reviewing the record, we are unable to conclude that the court abused its discretion by finding that $250 per hour was a reasonable and customary fee charged for similar legal services in the locality. The court's actions were not unreasonable, arbitrary, nor unconscionable. Accordingly, Appellee's fourth cross-assignment of error, as it relates to the reasonableness of counsel's hourly rate, is overruled.
{¶ 52} Appellee also contests the amount of attorney fees awarded to Appellant. Specifically, Appellee argues that the court abused its discretion by awarding more than $5,000 in attorney fees due to Appellant's limited success on the merits. However, in light of our disposition in assignment of error four, we need not address this aspect of Appellee's fourth cross-assignment of error.
{¶ 53} Appellant's assignments of error are sustained. Cross-assignments of error one, two, and three are overruled and cross-assignment of error four is overruled in part and not addressed in part. Accordingly, the judgment of the Summit County Court of Common Pleas is affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.
BAIRD, J. and CARR, J. CONCUR.
[1] R.C. 1345.05(A)(3) provides that the Attorney General is to "[m]ake available for public inspection *** all judgments, including supporting opinions, by courts of this state that determine *** that specific acts or practices violate [R.C.] 1345.02 or 1345.03[.]"