IN RE TERMINATION OF EMPLOYMENT OF PRATT ET AL., SHERIFF'S DEPUTIES.
IN RE TERMINATION OF EMPLOYMENT OF MOORE ET AL., SHERIFF'S DEPUTIES.

(Nos. 74-589 and 74-730—Decided December 31, 1974.)

108

*Messrs. Lucas, Prendergast, Albright, Gibson, Brown & Newman, Mr. John A. Brown* and *Mr. W. Joseph Strapp,* for appellants, deputy sheriffs.

*Mr. Daniel T. Spitler,* prosecuting attorney, and *Mr. Donald D. Simmons,* for appellee, Earl L. Rife, Sheriff, in case No. 74-589.

*Mr. Craig S. Albert,* for appellee, Carl E. Henderson, Sheriff, in case No. 74-730.

-I-

STERN, J. Both of these cases involve the issue of whether an appeal from an order of the State Personnel

Board of Review, which attacks the jurisdiction of the board, must be brought in the Court of Common Pleas of Franklin County, or whether such appeal may also be brought in the Court of Common Pleas of the county where the affected employee resides. .

The powers and duties of the State Personnel Board of Review, as set out in R. C. 124.03, include the power to: "* * * hear appeals, as provided by law, of employees in the *classified* state service from final decisions * * * relative to reduction in pay or position, layoff, suspension, discharge, assignment or reassignment to a new or different position classification * * *."

In both cases, the claim is made that the board lacked jurisdiction because the employees were not members of the classified civil service. In both cases, the board decided that the employees, deputy sheriffs, were members of the *classified* civil service.

Appeals from orders of the board are governed by two separate statutes. R. C. 119.12 provides that:

"Any party adversely affected by any order of an agency * * *may appeal to the Court of Common Pleas of Franklin County * * *.

" * * *

"The court may affirm the order of the agency complained of in the appeal if it finds, upon consideration of the entire record and such additional evidence as the court has admitted, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law. In the absence of such a finding, it may reverse, vacate, or modify the order or make such other ruling as is supported by reliable, probative, and substantial evidence and is in accordance with law. * * *"

R. C. 119.12 is a general statute providing for appeals from orders of various administrative agencies, and applies to all orders of the board. *State, ex rel. Oliver,* v. *State Civil Service Commission* (1959), 168 Ohio St. 445, 155 N. E. 2d 897. R. C. 124.34, a statute specifically governing appeals from orders of the board, provides, in part:

"In cases of removal or reduction in pay for disciplinary reasons, either the appointing authority or the officer or employee may appeal from the decision of the State Personnel Board of Review * * * to the Court of Common Pleas of the county in which the employee resides in accordance with the procedure provided by Section 119.-12 of the Revised Code."

On its face, R. C. 124.34 permits an appeal of an order by the board to be brought in the county in which the employee resides. The Court of Appeals for Cuyahoga County, in its opinion, maintained that when read *in pari materia* with R. C. 119.12, R. C. 143.27 (now R. C. 124.34) applies only to appeals of matters such as sufficiency of evidence, and not to appeals claiming a lack of jurisdiction on the part of the board.

That court's decision is apparently based upon the language in R. C. 119.12, which limits judicial review to issues of whether "the order is supported by reliable, probative, and substantial evidence and is in accordance with law." However, neither the Court of Appeals for Cuyahoga County nor the sheriffs have suggested any reason why the question of the board's jurisdiction is not one of whether the order "is in accordance with law." Contrary to the Cuyahoga County court's construction, it is difficult to imagine a question which is more fundamentally one of whether an order is "in accordance with law" than the question of whether the agency issuing the order had jurisdiction to do so. We find no basis for the Cuyahoga County Court's position. Indeed, if that position were accepted, the mandate of the Franklin County court would likewise be narrowed, and no court would have authority to consider the fundamental question of jurisdiction. We find no basis in statutory language for any claim that R. C. 124.34 means something other than its plain and specific provision, *i. e.*, that an appeal from a decision of the board may be taken "to the Court of Common Pleas of the county in which the employee resides."

The basis of the Cuyahoga County court's strained

construction of the statutes is apparently a fear that allowing jurisdictional appeals in all 88 Ohio counties would lead to chaotic results. The court said that "[I]f each Common Pleas Court in this state were permitted to determine when the State Personnel Board of Review had jurisdiction to hear an appeal, an employee living in one county might be denied access to the board, whereas an employee having an identical job, but living in a different county, would be given permission to appeal to the board."

This court is confident of the ability of Ohio's lower courts to prevent chaotic and inconsistent results. The question of jurisdiction turns upon a determination of whether an employee is a member of the classified civil service and whether the actions taken by his employer are of the type subject to review by the board. No doubt, in applying the statutory language to particular fact situations, the courts of Ohio's 88 counties will differ among themselves, and these differences may ultimately need to be resolved by this court. But the advantages of wholly consistent state-wide decisional law, great as they are. must be balanced against the convenience and economy of permitting local courts to decide local matters. Further, the decision of the lower courts, by their very conflicts, provide this court with an invaluable basis for thoughtful resolution of complex issues.

In the instant case, the legislative judgment was to permit appeals of board decisions to take place in the counties where affected employees reside. Whatever the arguments as to the relative benefit to the legal system in having a single deciding forum, or to the litigants in having a more convenient forum, the action of the General Assembly controls.

We therefore hold that an appeal from a decision of the State Personnel Board of Review, which challenges the jurisdiction of that board, may be brought in the Court of Common Pleas of the county where the employee resides. and, accordingly, we disapprove the judgment of the Court of Appeals for Cuyahoga County, and affirm the judgments

of the Courts of Appeals for Geauga and Wood Counties on the jurisdictional issue of where an appeal may be taken.

-II-

In case No. 74-589, a second issue is presented. Sheriff Rife contends that the deputies whom he removed from office were not members of the classified civil service, and hence that they had no right of appeal to the board.

The civil service of state and local governments are members of either the classified or the unclassified service, as provided by R. C. 124.11. The unclassified service, which is exempt from qualifying examinations, includes elected officials, members of various boards and commissions, members of the military service of the state, the administrative staff and teachers of public schools and universities, and various other positions as provided by R. C. 124.11. The classified service includes all state and local government employees not specifically included in the unclassified service.

No statute specifically assigns deputy sheriffs to either branch of the civil service. Rather, assignment depends upon the construction of R. C. 124.11(A)(9).

This issue was previously before this court, *State, ex rel. Emmons,* v. *Lutz* (1936), 131 Ohio St. 466, 3 N. E. 2d 502. In that case, this court held that the use of the word "deputies" in G. C. 486-8 (now R. C. 124.11) is not conclusive in determining whether an employee is properly a member of the unclassified service. At page 469, the court said:

"* * * [I]t must be clear that a mere title is not at all conclusive. The true test is the duty actually delegated to and performed by an employee. * * *'" The court pointed out that the term, "deputy," refers not just to anyone who carries out certain tasks under his principal, but rather to one who, " 'when duly qualified, may perform all and singular the duties of his principal.' " The court also held that the classification of deputy sheriffs as to a branch of the civil service was a question of fact, dependent upon

the actual authority granted to and the duties performed by particular deputy sheriffs.

Sheriff Rife, in case No. 74-589, contends that the decision in the *Lutz* case is no longer applicable because the statutory language has been changed. G. C. 486-8(a)(9), in effect at the time of the *Lutz* decision, provided that the unclassified service should include:

"The deputies of elective or principal executive officers authorized by law to act for and in the place of their principals and holding a fiduciary relation to such principals."

The present statute, R. C. 124.11(A)(9), provides that the unclassified service shall include:

"The deputies and assistants of elective or principal executive officers authorized to act for and in the place of their principals, or holding a fiduciary relation to such principals *and those persons employed by and directly responsible to elected county officials and holding a fiduciary or administrative relationship to such elected county officials,* and the employees of such county officials whose fitness would be impracticable to determine by competitive examination * * *." (Emphasis added.)

The language, emphasized above, which was added to the statute, makes members of the unclassified service "persons employed by and directly responsible to elected county officials and holding a fiduciary or administrative relationship to such elected county officials.'"

Deputy sheriffs are clearly employed by and directly responsible to their sheriffs, who are elected county officials. However, R. C. 124.11(A)(9) applies only to such employees who also have "a fiduciary or administrative relationship" to their elected principals. Those words require something more than the ordinary relationship of employer and employee. As this court said in *Lutz, supra,* "the

—————

'No claim is made that the duties of a deputy sheriff are such that it "would be impracticable to determine [their fitness] by competitive examination," and it was stipulated that the deputies did not have administrative duties.

true test is the *duty* actually delegated to and performed by an employee." (Emphasis added.)

It can hardly be denied that the duties assigned to deputy sheriffs may extend far beyond the duties of a fiduciary or an administrator. A deputy sheriff may be called upon to serve process upon witnesses (R. C. 3.10, 117.03), and to serve writs and orders such as levys on property, writs of attachment, and summons to jurors. (R. C. 311.17.) He may perform ordinary police functions, such as transporting prisoners (R. C. 339.57), guarding prisoners in the county jail (R. C. 341.05), and exercising the general duties of a peace officer (R. C. 2935.01). For many deputies, a principal duty is to patrol state highways (R. C. 4513.39), while others are assigned as bailiffs in county courts (R. C. 2301.12). Certainly, not all deputies performing these various duties can be said to act as fiduciaries or administrators. For many, the duties assigned are virtually identical to those assigned to a member of a metropolitan police force or of the State Highway Patrol, or to a bailiff in the civil courts. All are positions of great importance and responsibility, but they do not impose the duties required of a fiduciary such as a trustee, a lawyer, an accountant, or a guardian. A "fiduciary relationship" is one in which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust. See 5 Bogert on Trusts and Trustees, 119-132. The law has been zealous in guarding against abuse of such a relationship, but the fact of the relationship must be proved. No doubt, there are cases where a deputy sheriff is in a true fiduciary relationship with the sheriff, *e. g.*, where a deputy sheriff has charge of deposits of bond (R. C. 2331.16), or acts as a receiver of property (R. C. 2333.22). This question is one of fact, not of title, and can only be answered by examination of the duties assigned to and performed by the deputy.

In case No. 74-589, the Court of Common Pleas of Wood County construed R. C. 143.08(A)(9) "as specifically,

exempting from the classified service the position of deputy sheriff, as such in fact * * *." For the reasons stated herein, we find this to be error. Because there was no finding of fact that the duties assigned to and performed by the deputies were such as to render them members of the unclassified civil service under R. C. 124.11(A)(9), we therefore reverse as to that issue.

In case No. 74-589, *judgment reversed in part and affirmed in part.*
In case No. 74-730, *judgment affirmed.*

O'NEILL, C. J., HERBERT, CELEBREZZE and W. BROWN, JJ., concur.

CORRIGAN and P. BROWN, JJ., concur in paragraph one of the syllabus and dissent from paragraph two of the syllabus and from the opinion and judgment.

WILLIAM B. BROWN, J., concurring. Whether a deputy sheriff is a member of the classified or unclassified service is a question which must be determined on a case-by-case basis. A sheriff who deems his deputy to be unclassified may feel free to remove him arbitrarily. Years of litigation might ensue, with a final determination that the deputy was indeed "classified," and, therefore, wrongfully excluded from his employment. In such case, the employee would be entitled to back pay for his period of unemployment. *Monaghan* v. *Richley* (1972), 32 Ohio St. 2d 190.

Although the issue is not squarely presented herein, in order to avoid such waste of human resources and public funds, and to ease the anxiety of public employees whose jobs are in the gray area between classified and unclassified service, I would require appointing authorities to utilize the procedure delineated in Rule PL-3-03,[5] Ad-

---

[5]Rule PL-3-03 reads:

"Deputies and Assistants.

"Notices from appointing authorities of the appointment of deputies and assistants exempt from the classified service under the provisions

ministrative Rules of the Director of Administrative Services, whereby a deputy's classified or unclassified status could be determined upon hiring.

CORRIGAN, J., concurring in paragraph one of the syllabus and dissenting from paragraph two thereof, the opinion and the judgment.

Paragraph one of the syllabus is an accurate statement of law but lacks any significance or impact on the factual situation we have before us. It has nothing whatever to do with deputy sheriffs.

Rather than join in the opinion and judgment of my colleagues, I would prefer to bide until the General Assembly specifically repeals R. C. 325.17 and 325.27, which sections were originally enacted, effective July 6, 1906, as G. C. 2981 and 2977 (98 Ohio Laws 89). Those sections are silent as to deputy sheriffs being either in classified or unclassified service. In fact, they specifically provide that a sheriff "may appoint and employ the necessary deputies * * * and discharge them."

R. C. 325.17 reads:

"*The officers mentioned in Section 325.27* of the Revised Code *may appoint and employ the necessary deputies,* assistants, clerks, bookkeepers, or other employees *for their respective offices,* fix the compensation of such employees *and discharge them,* and shall file certificates of such action with the county auditor. Such compensation shall not exceed, in the aggregate, for each office, the amount fixed by the board of county commissioners for such office. When so fixed, the compensation of each such deputy, assistant, bookkeeper, clerk, and other employee shall be paid bi-

---

of paragraph 9, subsection (A) of Sec. 143.08, Ohio Revised Code [now R. C. 124.11(A) (9)], shall be accompanied by a statement of the provisions of the law under which such deputies and assistants are appointed and a statement of the duties to be assigned to such appointees showing that they are in fact authorized to act for and in place of their principals or are performing duties of a confidential and fiduciary character involving the responsibilities of their principals."

weekly from the county treasury, upon the warrant of the auditor. The amount of biweekly payment shall be adjusted so that the total amount paid out to an employee over a period of one year is equal to the amount such employee would receive if he were paid semi-monthly. Each of such officers may require such of his employees as he deems proper to give bond to the state, in an amount to be fixed by such officer, with sureties approved by him, conditioned for the faithful performance of their official duties. Such bond, with the approval of such officer indorsed thereon, shall be deposited with the county treasurer and kept in his office." (Emphasis supplied.)

R. C. 325.27 provides:

"All the fees, costs, percentages, penalties, allowances, and other perquisites collected or received by law as compensation for services by a county auditor, county treasurer, probate judge, *sheriff*, clerk of the Court of Common Pleas, county engineer, or county recorder, shall be received and collected for the sole use of the treasury of the county in which such officers are elected, and shall be held, accounted for, and paid over as public moneys belonging to such county in the manner provided by Sections 325.30 and 325.31 of the Revised Code." (Emphasis supplied.)

If anything further need be written to plot my position on this matter it would only be to point to the tremendous powers and duties of a sheriff in Ohio as set forth in R. C. 311.07, and then to soberly reflect on the provision of R. C. 311.05 that:

"The sheriff shall be responsible for the neglect of duty or misconduct in office of each of his deputies."

The first question then that naturally occurs is, should the sheriff have the right to discharge a deputy? The General Assembly has answered that query with clarity in R. C. 325.17 and the subject needs no judicial legislation.

P. BROWN, J., concurs in the foregoing dissenting opinion.