[Cite as *State v. Betts*, 2020-Ohio-4891.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 19AP-226 |
| v. | : | (C.P.C. No. 18CR-2361) |
| Felicia Betts, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on October 13, 2020

**On brief:** *Dave Yost*, Attorney General, and *Mark C. Sleeper* for appellee. **Argued:** *Joseph J. Asfoura.*

**On brief:** *Yeura R. Venters*, Public Defender, and *Robert D. Essex*, for appellant. **Argued:** *Robert D. Essex.*

APPEAL from the Franklin County Court of Common Pleas

BRUNNER, J.

{¶ 1} Defendant-appellant, Felicia Betts, appeals a judgment of the Franklin County Court of Common Pleas sentencing her to serve 17 months for Medicaid fraud and pay restitution in the amount of $214,957.84 to the Ohio Department of Medicaid. The trial court correctly concluded that Betts abused a position of trust to defraud the State, permitting the imposition of a prison sentence as punishment for the crime. Because there was no question raised before the trial court about the scarcity of community control resources, a statute requiring the trial court to make inquiries about available resources before sentencing Betts to prison was not applicable. We therefore overrule both of Betts' assignments of error and affirm.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On March 15, 2018, a Franklin County Grand Jury indicted Betts, a nurse, for a single third-degree felony count of Medicaid fraud. (Mar. 15, 2018 Indictment.) Betts

initially pled "not guilty" to the charge, but changed her plea to "guilty" to a lesser-included fourth-degree felony count of Medicaid fraud with an agreed restitution amount of $214,957.84. (Feb. 19, 2019 Plea Form at 1; Nov. 14, 2018 First Plea Hearing Tr. at 6-8, filed May 22, 2019; Feb. 19, 2019 Second Plea Hearing Tr. at 5-6, 11, filed May 22, 2019.)

{¶ 3} During the plea hearing, the facts of the case were read into the record as follows:

> [PROSECUTION:] Ms. Betts was originally scheduled to work as a night-shift nurse for a young child. Was authorized to work twelve hours a day, seven days week. That began in May of 2016. After working for approximately a month and a half, the child's parents sought to discontinue the night-shift-nursing service. At that time, Ms. Betts stopped providing services for that recipient. However, those hours were still authorized in the All Services Plan, and that was never changed. So beginning about a month later, the defendant billed one weekend to the department of Medicaid and got paid for it. In August, billed a couple more weekends and continued to get paid. And then beginning in September of 2016, began billing every week for seven days a week, twelve hours per day for shifts and was paid over $214,000, all for shifts that she never worked. During that two-year period, she continued to get paid those moneys out of the treasury here in Franklin County.
>
> THE COURT: According to my notes from when we talked before [at a prior plea hearing], there were 80 separate false bills; is that right?
>
> [PROSECUTION:] That's correct, Your Honor. There were 80 different times when she had to log in a submit that false billing.
>
> THE COURT: And has any reimbursement been made yet by Ms. Betts?
>
> [PROSECUTION:] It's my understanding she made a payment today of $500 down at the clerk's office.
>
> THE COURT: Any exceptions, [from the Defense]?
>
> [DEFENSE:] Not for purposes of the plea, Your Honor.

(Feb. 19, 2019 Plea Hearing Tr. at 3-4.) A pre-sentence investigation was ordered.

{¶ 4} During the trial court's sentencing hearing, the prosecution argued that, Betts, who had been an independent Medicaid provider who was permitted to bill the Ohio

Department of Medicaid directly, took advantage of her "position of trust" to commit the offense and therefore could be subjected to prison time pursuant to R.C. 2929.13(B)(1)(b)(vii). (Mar. 14, 2019 Sentencing Tr. at 9, filed May 22, 2019.) The defense responded that Betts had not occupied a position of trust in relation to the Ohio Department of Medicaid other than in the colloquial sense in which any customer expects and trusts a service provider not to falsely overbill for services. *Id.* at 10. The defense agreed that, had Betts used her status as a nurse to steal from her patients, it might consider that to be abuse of a position of trust in the relevant sense, but reiterated that the relationship with the State was not of that character. *Id.*

{¶ 5} The trial court orally found that Betts, by virtue of setting herself up in a position where she could bill the government for services, had acquired a position of trust which she subsequently abused to enable the crime. *Id.* In light of the serious financial loss to the State and what the trial court found to be Betts' less-than-forthcoming responses during the presentence investigation interview, the trial court sentenced Betts to 17 months in prison. *Id.* at 11; Mar. 14, 2019 Jgmt. Entry.

{¶ 6} Betts now appeals.

## II. ASSIGNMENTS OF ERROR

{¶ 7} Betts alleges two assignments of error

> [1.] The appellant's prison sentence on a felony of the fourth degree was not supported by the record and was contrary to law where the court found she was in a position of trust pursuant to R.C. 2929.13(B)(1)[(b)](viii) where no fiduciary relationship existed between Ms. Betts and the State of Ohio.
>
> [2.] The trial court's sentence is contrary to law as the court did not comply with R.C. 2929.13(B)(1)(c) mandating the court to inquire of ODRC regarding programs that may be available for the appellant prior to imposing a prison sentence.

## III. DISCUSSION

### A. Standard of Review

{¶ 8} "Both the state and the defendant have an appeal as of right if a sentence is 'contrary to law.' " *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, ¶ 21, quoting R.C. 2953.08(B)(2); R.C. 2953.08(A)(4). When reviewing an appeal as of right from a criminal sentence, the Ohio Revised Code instructs:

(1) If the sentencing court was required to make the findings required by division (B) or (D) of section 2929.13 or division (I) of section 2929.20 of the Revised Code, or to state the findings of the trier of fact required by division (B)(2)(e) of section 2929.14 of the Revised Code, relative to the imposition or modification of the sentence, and if the sentencing court failed to state the required findings on the record, the court hearing an appeal under division (A), (B), or (C) of this section shall remand the case to the sentencing court and instruct the sentencing court to state, on the record, the required findings.

(2) The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.

The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:

(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

(b) That the sentence is otherwise contrary to law.

R.C. 2953.08(G); *see also State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 7-10, 22-23. Division (F) of R.C. 2953.08 requires us to review the entire trial court record, including oral and written statements, and presentence reports. R.C. 2953.08(F)(1) through (4). In short, we consider whether the trial court made the required findings and whether appellate materials listed in division (F) show, "clearly and convincingly," that the record at sentencing did not support the trial court's findings or that the sentence was contrary to law. *Marcum* at ¶ 22.

### B. First Assignment of Error – Whether the Trial Court Erred in Concluding that Betts Abused a Position of Trust

{¶ 9} R.C. 2929.13(B)(1) contains a list of conditions required for imposing prison terms on persons convicted of non-violent fourth- or fifth-degree felonies:

(a) Except as provided in division (B)(1)(b) of this section, if an offender is convicted of or pleads guilty to a felony of the fourth or fifth degree that is not an offense of violence or that is a qualifying assault offense, the court shall sentence the offender to a community control sanction or combination of community control sanctions if all of the following apply:

(i) The offender previously has not been convicted of or pleaded guilty to a felony offense.

(ii) The most serious charge against the offender at the time of sentencing is a felony of the fourth or fifth degree.

(iii) The offender previously has not been convicted of or pleaded guilty to a misdemeanor offense of violence that the offender committed within two years prior to the offense for which sentence is being imposed.

(b) The court has discretion to impose a prison term upon an offender who is convicted of or pleads guilty to a felony of the fourth or fifth degree that is not an offense of violence or that is a qualifying assault offense if any of the following apply:

* * *

(vii) The offender held a public office or position of trust, and the offense related to that office or position; the offender's position obliged the offender to prevent the offense or to bring those committing it to justice; or the offender's professional reputation or position facilitated the offense or was likely to influence the future conduct of others.

R.C. 2929.13(B)(1).[1]

{¶ 10} The record does not indicate any dispute between the parties about the sentencing law as applied to Betts' conviction, that is, that Betts was required to be sentenced to community control unless one of the conditions in division (B)(1)(b) applied. *See* R.C. 2929.13(B)(1)(a).  Consistent with current R.C. 2929.13(B)(1)(b)(vii) (formerly division (viii) of the statute), the trial court found that Betts held a position of trust in that she was permitted to directly bill the Ohio Department of Medicaid for her services and had

---

[1] At the time of Betts' sentencing, the language regarding positions of trust currently found at R.C. 2929.13(B)(1)(b)(vii) was located instead at R.C. 2929.13(B)(1)(b)(viii). *See* 2019 Am.Sub.H.B. No. 166 (archived online at 2019 Ohio HB 166, Part 2 of 7) (deleting division (B)(1)(b)(iv) and renumbering remaining divisions accordingly).  Additionally, division (B)(1)(a) of R.C. 2929.13 contained four subdivisions (i) through (iv), but that change does not affect our analysis of this assignment of error. 2019 Am.Sub.H.B. No. 166.

used that position of trust to defraud the department. (Mar. 14, 2019 Sentencing Tr. at 9.) The issue in this assignment of error is whether the record indicates the trial court's finding that Betts held a position of trust was "clearly and convincingly" not supported or was contrary to law. R.C. 2953.08(G); *Marcum* at ¶ 22.

{¶ 11} In *State v. Massien*, the Supreme Court of Ohio analyzed the "position of trust" factor at considerable length. 125 Ohio St.3d 204, 2010-Ohio-1864, ¶ 14-40. It noted that some districts had found the factor to be met in virtually any case involving a breach of trust. *Id.* at ¶ 14. However, it rejected an "unrestrained application of the phrase 'position of trust' to 'every breach of ethical, moral, or filial duty by a private individual,' " finding such an application to be "[in]consistent with the sentencing principles set forth by the General Assembly" which, "as a whole[,] illustrate[d] that the General Assembly intended a narrow application of the phrase 'position of trust.' " (Citations omitted.) *Id.* at 21-22. The high court rather construed "position of trust" to refer to a "special relationship of trust and confidence equivalent to a fiduciary relationship." *Id.* at paragraph two of the syllabus. The high court noted that a fiduciary relationship has been defined as "one in which 'special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust.' " *Id.* at ¶ 16, quoting *In re Termination of Pratt*, 40 Ohio St.2d 107, 115 (1974).[2]

{¶ 12} Though the principles of law set forth in *Massien* are useful in this case, *Massien* does not directly dictate the result here. That is, in *Massien*, the high court considered whether a nurse who stole medicine occupied a position of trust relative to her employer, the hospital. *Massien* at ¶ 3. It concluded that her relation was that of employee to employer, and that she did not "occup[y] a special relationship of trust and confidence equivalent to a fiduciary relationship." *Id.* at paragraphs two and four of the syllabus. Here, the relationship under consideration is the relation between an individual practitioner acting as a billing service provider and the Ohio Department of Medicaid. In other words, applying the principles (if not the result) of *Massien*, the question this Court is to answer is whether Betts enjoyed a special relationship of trust and confidence equivalent to a

---

[2] "The law has been zealous in guarding against abuse of such a relationship, but the fact of the relationship must be proved. * * * This question is one of fact, not of title, and can only be answered by examination of the duties assigned to and performed by the [person in question]." *In re Termination of Pratt*, 40 Ohio St.2d 107, 115 (1974).

fiduciary relationship with the Ohio Department of Medicaid. *Id.* at paragraph two of the syllabus.

{¶ 13} There is no evidence in the record to indicate how exactly Betts came to be in the position of being able to bill the Ohio Department of Medicaid directly for the services she provided. However, the relevant administrative code provisions require that providers seeking to bill the Department must agree "[t]o render medical services as medically necessary for the patient and only in the amount required by the patient * * *; submit claims only for services actually performed; and, bill [Ohio Department of Medicaid] for no more than the usual and customary fee charged other patients for the same service." Ohio Adm.Code 5160-1-17.2(A). In addition, it is grounds for the Department to propose to terminate a provider's agreement if "[t]he provider, by any act or omission, has negatively affected * * * the fiscal or programmatic integrity of the medicaid program." Ohio Adm.Code 5160-1-17.6(G)(13). The regulations provide for the possibility of audits of providers and other checks based on a tiered system. Ohio Adm.Code 5160-1-17.8. However, private duty nurses (as Betts seems to have been) are subject only to "limited" risk review which does not include site visits or other substantial audit-style oversight. *Compare* Ohio Adm.Code 5160-1-17.8(D)(1) *with* Ohio Adm.Code 5160-1-17.8(D)(2)(b); *see also* Ohio Adm.Code 5160-1-17.8 (appendix) (noting that private duty nurses are screened at the "limited" risk review level).

{¶ 14} The parties do not cite, and nor did we locate, any Ohio caselaw on the nature of the relationship that exists between medical providers and the State of Ohio in the context of billing Medicaid or insurers. However, the United States Sixth Circuit Court of Appeals has held, consistent with the Third, Fourth, Fifth, Seventh, and Ninth Circuits, that "health care providers, or persons who hold themselves out as providers of care, occupy a position of trust with respect to both public and private insurance companies if they exercise professional or managerial discretion in treating patients and in billing for those treatments, which discretion is given deference by the insurers and helps to facilitate the crime." *United States v. Hodge*, 259 F.3d 549, 555-56 (6th Cir.2001) (collecting cases); *accord United States v. Silber*, E.D.Mich. No. 09-20223, 2010 WL 5174588, 2010 U.S. Dist. LEXIS 132442, *31-34 (Dec. 15, 2010). In *Hodge*, the Sixth Circuit upheld a finding by the trial court that the defendant, a founder and manager of a substance abuse treatment

facility, occupied a position of trust relative to billing healthcare insurance companies and, by billing them for services not actually provided, abused that trust in order to commit fraud. *Hodge* at 555-57. The Sixth Circuit noted the significance of the fact that the insurance companies are forced to rely on "a presumption of honesty" when reviewing statements from providers. *Id.* at 557. This analysis seems consistent with the Ohio Administrative Code provisions and we therefore consider it persuasive in this case.

{¶ 15} The record leaves no question that Betts occupied a position that obligated her to act in the fiscal interest of the State in treating her patients and that she was subject to little or no oversight. Ohio Adm.Code 5160-1-17.2(A); Ohio Adm.Code 5160-1-17.6(G)(13); Ohio Adm.Code 5160-1-17.8(D)(1), appendix. (Feb. 19, 2019 Plea Hearing Tr. at 3-4.) The record is likewise clear that she used this position to bill and be paid for illusory services, for more than one year before her fraud was detected. (Feb. 19, 2019 Plea Hearing Tr. at 3-4.) Whatever the other circumstances that permitted the situation to develop, we find the record sufficient to conclude that "confidence and trust [was] reposed in the integrity and fidelity of [Betts]," that she thereby acquired "a resulting position of superiority or influence," and that she used it and the accompanying "presumption of honesty" to defraud the Ohio Department of Medicaid. (Citations and quotations omitted.) *Massien* at ¶ 16; *Hodge* at 557.

{¶ 16} Under the circumstances, the appellate record does not show, "clearly and convincingly," that the record at sentencing failed to support the trial court's findings or that the sentence was contrary to law. R.C. 2953.08(G); *Marcum*, 2016-Ohio-1002, at ¶ 22. We therefore overrule Betts' first assignment of error.

## C. Second Assignment of Error – Whether the Trial Court made Appropriate Inquiry Regarding Alternative Community Control Sanctions

{¶ 17} At the time when Betts was sentenced, R.C. 2929.13 included this provision:

> If a court that is sentencing an offender who is convicted of or pleads guilty to a felony of the fourth or fifth degree that is not an offense of violence or that is a qualifying assault offense *believes that no community control sanctions are available* for its use that, if imposed on the offender, *will adequately fulfill the overriding principles and purposes of sentencing, the court shall contact the department of rehabilitation and correction and ask the department to provide the court with the names of, contact information for, and program details of*

> *one or more community control sanctions that are available for persons sentenced by the court.* Not later than forty-five days after receipt of a request from a court under this division, the department shall provide the court with the names of, contact information for, and program details of one or more community control sanctions that are available for persons sentenced by the court, if any. Upon making a request under this division that relates to a particular offender, a court shall defer sentencing of that offender until it receives from the department the names of, contact information for, and program details of one or more community control sanctions that are available for persons sentenced by the court or for forty-five days, whichever is the earlier.
>
> If the department provides the court with the names of, contact information for, and program details of one or more community control sanctions that are available for persons sentenced by the court within the forty-five-day period specified in this division, the court shall impose upon the offender a community control sanction under division (B)(1)(a) of this section, except that the court may impose a prison term under division (B)(1)(b) of this section if a factor described in division (B)(1)(b)(i) or (ii) of this section applies. If the department does not provide the court with the names of, contact information for, and program details of one or more community control sanctions that are available for persons sentenced by the court within the forty-five-day period specified in this division, the court may impose upon the offender a prison term under division (B)(1)(b)(iv) of this section.

(Emphasis added.) R.C. 2929.13(B)(1)(c) (prior to Oct. 17, 2019); *see* 2019 Am.Sub.H.B. No. 166. Betts argues that the trial court made no inquiry about available community control programs or resources before sentencing her to prison, and therefore, could not have legally sentenced her to prison under former R.C. 2929.13(B)(1)(b)(viii). (Betts' Brief at 12-15.)

{¶ 18} The State agrees that the trial court did not make the above inquiry, but notes the inquiry under the former section of the law (R.C. 2929.13(B)(1)(c)) was conditioned on whether a trial court "believe[d] that no community control sanctions [were] available for its use." R.C. 2929.13(B)(1)(c) (prior to Oct. 17, 2019). (State's Brief at 22-33.) In other words, the State argues that this division of the statute was intended to require courts, faced with a lack of community control resources, to make inquiry about other possible resources

before sentencing an otherwise community-control-deserving offender to prison. (State's Brief at 22-33.)  It was not intended to prevent a trial court from sending to prison an offender who deserved prison. *See State v. Lawson*, 2d Dist. No. 2017-CA-28, 2018-Ohio-1532.

{¶ 19}  The State also suggests a plain error analysis, since the defense did not object at sentencing on this basis. (State's Brief at 21-24.)  The State argues in applying a plain error analysis that Betts failed to show that the asserted error was "outcome-determinative." *Id.* at 24.  While we agree that a plain error analysis is appropriate, the plain error standard under Crim.R. 52(B) permits plain errors or defects to be noticed if substantial rights were affected.  *Id.*  Approximately five years after this rule was adopted, the Supreme Court stated that "a jury instruction violative of R.C. 2901.05(A) does not constitute a plain error or defect under Crim. R. 52(B) unless, but for the error, the outcome of the trial clearly would have been otherwise." *State v. Long*, 53 Ohio St.2d 91, 96-97 (1978).  This led to a large number of cases that placed emphasis on showing clear outcome determination as a prerequisite to finding plain error. *See*, *e.g.*, *State v. Pickens*, 141 Ohio St.3d 462, 2014-Ohio-5445, ¶ 109; *State v. Osie*, 140 Ohio St.3d 131, 2014-Ohio-2966, ¶ 85.

{¶ 20}  We note, however, that in 2015, the Supreme Court, in *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, ¶ 22, held that the outcome-determinative analysis for plain error is based on "a reasonable *probability* that the error resulted in prejudice" using "the same deferential standard for reviewing ineffective assistance of counsel claims." *Id.*, citing *United States v. Dominguez Benitez*, 542 U.S. 74, 81-83 (2004) (construing Fed.R.Crim.P. 52(b), the federal analog to Crim.R. 52(B), and also noting that the burden of proving entitlement to relief for plain error "should not be too easy").  The Supreme Court marked the existence of this shift when, two years later, it stated:

> Even if the error is obvious, it must have affected substantial rights, and "[w]e have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial." [*State v. Barnes*, 94 Ohio St.3d 21, 27 (2002).] We recently clarified in *State v. Rogers*, * * * that the accused is "required to demonstrate a reasonable *probability* that the error resulted in prejudice—the same deferential standard for reviewing ineffective assistance of counsel claims." (Emphasis sic.) *Id.* at ¶ 22, citing [] *Dominguez Benitez*, 542 U.S. [at] 81-83.

(Underlined emphasis added, but italic emphasis original.) *State v. Thomas*, 152 Ohio St.3d 15, 2017-Ohio-8011, ¶ 33; *but see id.* at ¶ 66 (Fischer, J., dissenting) (indicating that he would revert to the "clearly would have been otherwise" language).

{¶ 21} Pre-*Rogers* plain error language (using clear outcome determination) has been repeated in cases that cite only to pre-*Rogers* precedent, but cases that have directly considered the standard in light of *Rogers* and *Thomas* have noted the shift. *Compare State v. Tench*, 156 Ohio St.3d 85, 2018-Ohio-5205, ¶ 218, *and State v. Myers*, 154 Ohio St.3d 405, 2018-Ohio-1903, ¶ 130, *with State v. Ford*, 158 Ohio St.3d 139, 2019-Ohio-4539, ¶ 124; *but c.f. State v. Clinton*, 153 Ohio St.3d 422, 2017-Ohio-9423, ¶ 39, *and State v. Cepec*, 149 Ohio St.3d 438, 2016-Ohio-8076, ¶ 67 (citing pre-*Rogers* cases). Accordingly, we have observed these Supreme Court decisions, en toto, to point toward a legal standard for plain error that was clarified and enunciated by *Rogers* and thereafter highlighted in *Thomas* in both the majority decision and dissent. We thus have previously determined that an accused seeking to show that an obvious error affected his or her substantial rights (and thereby, the outcome) must "demonstrate a reasonable probability that the error resulted in prejudice," such that there is a "probability of a different result [that] is sufficient to undermine confidence in the outcome of the proceeding." (Internal quotations omitted.) *State v. Pippins*, 10th Dist. No. 15AP-137, 2020-Ohio-503, ¶ 25; *State v. Burney*, 10th Dist. No. 15AP-197, 2020-Ohio-504, ¶ 23; *see also Myers*, 2018-Ohio-1903, at ¶ 130; *Dominguez Benitez*, 542 U.S. at 81-83; *Tench*, 2018-Ohio-5205, at ¶ 218; *Thomas*, 2017-Ohio-8011, at ¶ 33; *Rogers*, 2015-Ohio-2459, at ¶ 22.

{¶ 22} Applying this articulation of plain error to Betts' case, we agree with the State. The trial court sentenced Betts to prison because it made a finding according to former R.C. 2929.13(B)(1)(b)(viii) that she committed fraud through use of a "position of trust" and because it considered the offense to have been serious, not because it believed it had no community control resources available for Betts. (Mar. 14, 2019 Sentencing Tr. at 9-11.) We find former R.C. 2929.13(B)(1)(c) was inapplicable here. The trial court's failure to make the inquiry contemplated by that division was not based on any belief by the trial court or recognition in the record that community control resources were inadequate for Betts' community supervision in lieu of being locked up. Rather, the record supports the trial court's decision to impose a prison sentence in that she occupied a position of trust and her

crime was serious enough under the sentencing factors to warrant it. We find no obvious error suggesting a reasonable probability that Betts suffered prejudice such that our confidence in the outcome of the proceeding was or would be undermined. We thus overrule Betts' second assignment of error.

## IV.  CONCLUSION

{¶ 23}  The trial court did not err in concluding that Betts, as an independent entity authorized to directly bill the Ohio Department of Medicaid for in-home health services, occupied a position of trust that she abused when she fraudulently, for more than a year, billed for services she never provided and netted over $200,000. It was not error for the trial court to conclude that Betts' criminal conduct satisfied current R.C. 2929.13(B)(1)(b)(vii) and as a consequence, warranted a prison sentence, even though her crime was a felony of the fourth degree. Because the trial court did not evince a belief that no community control resources were available to use in Betts' case, it need not have inquired under former R.C. 2929.13(B)(1)(c) about the availability of resources before sentencing her to prison. We, therefore, affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

KLATT and BEATTY BLUNT, JJ., concur.