[Cite as *Torea Consulting, LTD v. Stanfill*, 2024-Ohio-3322.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| TOREA CONSULTING, LTD. | : | JUDGES: |
| | : | Hon. John W. Wise, P.J. |
| Plaintiff-Appellant | : | Hon. Craig R. Baldwin, J. |
| | : | Hon. Andrew J. King, J. |
| -vs- | : | |
| | : | |
| DAVID STANFILL, ET AL. | : | Case No. 2024CA00023 |
| | : | |
| Defendant-Appellee | : | O P I N I O N |


CHARACTER OF PROCEEDING:      Appeal from the Court of Common Pleas, Case No. 2022CV00974


JUDGMENT:      Affirmed


DATE OF JUDGMENT:      August 29, 2024


APPEARANCES:

For Plaintiff-Appellant

SCOTT J. FRIEDMAN
600 IMG Building
1360 East Ninth Street
Cleveland, OH 44114

For Defendant-Appellee

JACK B. COOPER
P.O. Box 35459
4684 Douglas Circle, NW
Canton, OH 44735

*King, J.*

{¶ 1}   Plaintiff-Appellant, Torea Consulting, LTD, appeals the January 31, 2024 judgment entry of the Court of Common Pleas of Stark County, Ohio, granting summary judgment to Defendant-Appellee, David Stanfill.  We affirm the trial court.

FACTS AND PROCEDURAL HISTORY

{¶ 2}   Appellant is a Canadian based company owned by Paul Billinger that invests in cryptocurrency.  Stanfill was the CEO of Squirrels Research Labs ("SQRL") located in North Canton, Ohio.  SQRL manufactured and sold computer devices known as "cards" to mine cryptocurrency.  Appellant purchased several cards, but they remained at the SQRL facility.  For a fee, SQRL would use the cards to mine cryptocurrency and then send the cryptocurrency to appellant.

{¶ 3}   In March 2021, the parties entered into an agreement wherein SQRL would rent the cards from appellant and use the cards to mine cryptocurrency for its own benefit. Thereafter, a dispute arose as to how much SQRL owed appellant.  SQRL employees asked Stanfill to intervene and deal with appellant.

{¶ 4}   On April 12, 2021, appellant and Stanfill entered into an agreement for the purchase of the cards.  Appellant agreed to sell the cards to SQRL, and SQRL agreed to pay appellant 160.2 units of a cryptocurrency known as Ethereum ("ETH").   The agreement did not have a date certain for the payment as SQRL needed time to convert U.S. dollars to ETH.  The value of ETH was volatile. The agreement was negotiated over a messaging application called Discord, an application commonly used by members of the cryptocurrency mining community.  Shortly after the agreement, SQRL sold some of the cards to Michael Maranda.

{¶ 5}   SQRL was unable to acquire the ETH due to a delayed pending transaction with a third party.   Thus, on April 20, 2021, Stanfill paid appellant 24 ETH out of his personal funds.   Thereafter, in late April early May 2021, SQRL offered to pay appellant in U.S. dollars.   Appellant rejected the offer.   On June 7, 2021, SQRL tendered payment of the remaining 136.2 ETH.   Appellant refused to accept the tender.

{¶ 6}   On August 3, 2021, appellant filed a complaint against SQRL because it had not been paid in full for the cards.   SQRL filed for bankruptcy and appellant voluntarily dismissed the complaint.

{¶ 7}   On June 21, 2022, appellant filed a complaint against Stanfill and Maranda, alleging fraudulent inducement, unjust enrichment, conversion, civil conspiracy, and defalcation/breach of fiduciary duty over the unpaid cards.   Appellant filed an amended complaint on July 8, 2022, to refine the claims.   Appellant was unable to locate Maranda.

{¶ 8}   On October 13, 2023, Stanfill filed a motion for summary judgment, claiming no genuine issues of material facts to exist.   In support, Stanfill submitted his own affidavit, copies of the Discord messages, and a transcript of his examination taken in the bankruptcy proceeding.   Appellant filed a response and attached an affidavit of Paul Billinger, excerpts of the Stanfill examination, Discord messages, and an April 2021 purchase agreement between SQRL and Maranda.   Appellant did not argue the civil conspiracy claim as it failed to locate Maranda and planned to dismiss that count.   By judgment entry filed January 31, 2024, the trial court agreed with Stanfill's arguments and granted the motion.

{¶ 9}   Appellant filed an appeal with the following assignment of error:

I

{¶ 10} "THE TRIAL COURT ERRED IN GRANTING DAVID STANFILL'S MOTION FOR SUMMARY JUDGMENT BECAUSE THERE ARE GENUINE ISSUES OF MATERIAL FACT."

I

{¶ 11} In his sole assignment of error, appellant claims the trial court erred in granting summary judgment to Stanfill.  We disagree.

{¶ 12} Summary judgment motions are to be resolved in light of the dictates of Civ.R. 56.  Regarding summary judgment, the Supreme Court stated the following in *State ex rel. Zimmerman v. Tompkins,* 75 Ohio St.3d 447 (1996):

Civ.R. 56(C) provides that before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made.  *State ex. rel. Parsons v. Fleming* (1994), 68 Ohio St.3d 509, 511, 628 N.E.2d 1377, 1379, citing *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274.

{¶ 13} In *Leech v. Schumaker,* 2015-Ohio-4444, ¶ 13 (5th Dist.), this court explained the following:

It is well established the party seeking summary judgment bears the burden of demonstrating that no issues of material fact exist for trial. *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 330, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The standard for granting summary judgment is delineated in *Dresher v. Burt* (1996), 75 Ohio St.3d 280 at 293: " * * * a party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall

be entered against the nonmoving party."   The record on summary judgment must be viewed in the light most favorable to the opposing party. *Williams v. First United Church of Christ* (1974), 37 Ohio St.2d 150.

{¶ 14} As an appellate court reviewing summary judgment motions, we stand in place of the trial court and review the issues de novo, under the same standards and evidence as the trial court*.  Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996).

### Fraudulent Inducement

{¶ 15}  The elements of fraudulent inducement are: "(1) a representation material to the transaction; (2) made falsely, with knowledge of its falsity, or with utter disregard and recklessness regarding its truth or falsity; (3) with the intent to mislead another into reliance; (4) justifiable reliance on the representation or concealment; (5) and injury proximately resulting from such reliance."  *Isaac v. Alabanza Corp.*, 2007-Ohio-1396, ¶ 20 (7th Dist.), citing *Burr v. Stark County Board of Commissioners,* 23 Ohio St.3d 69 (1986).

{¶ 16} Appellant argues Stanfill made the offer to pay 160.2 ETH to purchase the cards with the intent to deceive appellant because "he did not intend to pay Torea in Ethereum for the Cards unless and until it was financially advantageous for him and/or SQRL to do so."  June 21, 2022 Complaint at ¶ 30; Appellant's Brief at 11-12.

{¶ 17} In examining the record submitted, the trial court found appellant "is unable to support this allegation with any evidence."  *See* January 31, 2024 Judgment Entry at 7.  The trial court found appellant has not met "its burden of proving that Stanfill knowingly and intentionally misled or deceived it in entering into the offer in this case, as Plaintiff

has not provided the Court with any evidence that would support this claim or create a question of fact as to said claim." *Id.*

{¶ 18} Upon our review of the evidence submitted, we agree with the trial court's determination. The agreement did not have a date certain for payment. And while it took longer for Stanfill to acquire the ETH than he thought, his estimation was an error, not fraud. In fact, he paid appellant 24 ETH out of his own pocket. SQRL offered to pay appellant in U.S. dollars and tendered the 136.2 ETH on June 7, 2021. Appellant rejected each offer.

**Unjust Enrichment**

{¶ 19} To establish a claim for unjust enrichment a plaintiff must demonstrate: "(1) a benefit conferred by a plaintiff upon a defendant, (2) knowledge by the defendant of the benefit, and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment." *Robinette v. PNC Bank*, 2016-Ohio-767, ¶ 23 (5th Dist.), citing *Hambleton v. R.G. Barry Corp.,* 12 Ohio St.3d 179, 183 (1984). Generally, Ohio law does not permit recovery under the theory of unjust enrichment when an express contract covers the same subject matter. *Padula v. Wagner*, 2015-Ohio-2374, ¶ 48 (9th Dist.), citing *Ulmann v. May*, 147 Ohio St. 468, 478-479 (1947).

{¶ 20} Although there was an express contract between the parties, appellant argues "an express contract will preclude an unjust enrichment claim only in the absence of fraud, bad faith, or illegality." Appellant's Brief at 15. Having found no evidence of fraud, bad faith, or illegality, we find, as the trial court did, that the unjust enrichment claim "fails as a matter of law, as the claim for recovery against Stanfill is based upon the same

set of facts that support a breach of contract claim." *See* January 31, 2024 Judgment Entry at 8.

{¶ 21} Despite this finding, the trial court analyzed the unjust enrichment claim in light of the evidence submitted and found no evidence of a benefit conferred upon Stanfill. There was no evidence that Stanfill received the cards or the money paid for the cards. In fact, as noted by the trial court, Stanfill paid appellant 24 ETH that he personally owned and was never reimbursed by SQRL. We agree with the trial court's analysis.

## Conversion

{¶ 22}   The elements to establish conversion are: "(1) plaintiff's ownership or right to possession of the property at the time of the conversion; (2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and (3) damages." *Dice v. White Family Cos.,* 2007-Ohio-5755 (2d Dist.), citing *Haul Transport of VA, Inc. v. Morgan,* 1995 WL 328995 (2d Dist. June 2, 1995).

{¶ 23} The trial court found the conversion claim failed because SQRL had possession of the cards upon appellant's agreement to sell the cards to SQRL. *See* January 31, 2024 Judgment Entry at 10. We agree with the trial court's decision. Appellant did not have ownership of the cards and Stanfill did not commit conversion of the cards by a wrongful act.

## Defalcation/Breach of Fiduciary Duty

{¶ 24} In order to prove a claim for breach of fiduciary duty, a plaintiff must establish: "(1) the existence of a duty arising from a fiduciary relationship; (2) a failure to observe the duty; and (3) an injury resulting proximately therefrom." *Harwood v. Pappas & Associates, Inc.,* 2005-Ohio-2442, ¶ 26 (8th Dist.). *Accord Grossniklaus v. Waltman,*

2010-Ohio-2937 (5th Dist.). A fiduciary duty is not owed to another absent the showing of a fiduciary relationship. *In re Termination of Employment of Pratt,* 40 Ohio St.2d 107, 115 (1974). A "fiduciary relationship" is "one in which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust." *Id.* Defalcation is the "misappropriation of trust funds or money held in any fiduciary capacity." *Black's Law Dictionary Online,* https://alegaldictionary.com/defalcation/ (accessed Aug. 23, 2024).

{¶ 25} The trial court found the relationship between the parties was that of seller and buyer as appellant sold the cards to SQRL; there was no evidence the sale gave rise to an express or a de facto fiduciary relationship. *See* January 31, 2024 Judgment Entry at 11. The trial court noted "parties to an arms-length business transaction do not ordinarily acquire a fiduciary duty towards one another." In reviewing the record, the trial court concluded "there was no existence of a fiduciary-like relationship between the parties." We agree with the trial court. There is no evidence to suggest the parties' relationship was one "of 'special confidence and trust,' similar to the trust a client places in a broker or financial advisor" as appellant argues. Appellant's Brief at 17.

{¶ 26} Upon review, we do not find any genuine issues of material fact to exist and therefore, find the trial court did not err in granting summary judgment to Stanfill.

{¶ 27} The sole assignment of error is denied.

{¶ 28} The judgment of the Court of Common Pleas of Stark County, Ohio is hereby affirmed.

By King, J.

Wise, P.J. and

Baldwin, J. concur.